**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| BRADLEY FEHRLE, | |
| Plaintiff, | CIVIL ACTION NO.: 4:22-cv-232 |
| v. | |
| THE MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH; CHATHAM COUNTY; and ROBIE WALP, | |
| Defendants. | |

## O R D E R

This action is before the Court on Defendants the Mayor and Aldermen of the City of Savannah ("the City") and Officer Robie Walp's Motion to Dismiss. (Doc. 8.) Plaintiff Bradley Fehrle commenced this action under 42 U.S.C. § 1983, alleging he was unlawfully arrested, detained, and prosecuted following a motor vehicle accident that occurred when he unexpectedly experienced a seizure while driving. (Doc. 1.) In the Amended Complaint, Plaintiff alleges, *inter alia*, false arrest and malicious prosecution claims against both Walp and the City (hereinafter, "Defendants").[1] (Doc. 4, pp. 23–34.) Defendants filed the at-issue Motion to Dismiss arguing, *inter alia*, that Plaintiff failed to state a claim for malicious prosecution, that Walp is entitled to qualified immunity, and that the City is not liable for Walp's actions. (See generally doc. 8-1.) Plaintiff filed a Response, (doc. 14), and Defendants filed a Reply, (doc. 18). For the reasons more fully explained below, the Court hereby **GRANTS in part and DENIES in part** the Motion. (Doc. 8.)

---

[1] While Chatham County was also named as a defendant in this case, it did not join in the at-issue Motion to Dismiss.

# BACKGROUND

## I.     The Accident and Walp's Investigation

The following are the relevant allegations asserted in the Amended Complaint.  (Doc. 4.)
On August 21, 2016, Plaintiff was driving with his friend, Shannon Bailey, in the passenger seat
down East Anderson Street in Savannah, Georgia.  (Id. at p. 5.)  Plaintiff was not under the
influence of any drugs or alcohol.  (Id. at p. 10.)  While driving, Plaintiff had a seizure and lost
control of his vehicle, leaving him incapacitated as the car accelerated.  (Id. at p. 6.)  The car then
flipped multiple times, resulting in catastrophic damage to the vehicle, Bailey's death, and severe,
life-threatening injuries to Plaintiff.  (Id. at pp. 6–7.)  Plaintiff was completely unconscious when
paramedics arrived on the scene and transported him to the hospital.  (Id. at p. 7.)  Upon arrival at
the hospital, the medical staff intubated Plaintiff and administered a number of medications,
including Fentanyl and Midazolam, in an effort to save his life.  (Id.)  As documented in the
hospital records included with his Amended Complaint, Plaintiff was admitted to the hospital at
3:07 p.m., and these medications were administered to him at 3:42 p.m.  (Id. at pp. 7–8, 10; see id.
at p. 8 (excerpt of medical record).)  Plaintiff was given several more doses of Fentanyl and
Midazolam on the same day.  (Id. at p. 8.)  Plaintiff ultimately survived and was discharged from
the hospital nine days after the accident.  (Id. at p. 9.)

Plaintiff has no family history of epilepsy.  (Id. at p. 16.)  Prior to August 21, 2016, he had
suffered only one "possible" seizure.  (Id.)  Plaintiff had an MRI and an electroencephalogram in
March and April of 2016, respectively, both of which yielded normal results.  (Id.)  Plaintiff had
never been diagnosed with a seizure disorder before the date of the accident.  (Id. at p. 17.)  As of
August 21, 2016, Plaintiff was in compliance with his doctor's instructions and recommendations,
and no limitations had been set on his ability to drive.  (Id.)

Officer Walp of the Savannah-Chatham Metropolitan Police Department was in charge of investigating Plaintiff's accident.  (Id. at p. 9.)  Within the course of his investigation, Walp obtained toxicology results from the Georgia Bureau of Investigation ("GBI") that confirmed Plaintiff was not under the influence of alcohol, marijuana, cocaine, or other illegal drugs, but indicated the presence of Fentanyl and Midazolam in Plaintiff's blood.  (Id. at pp. 9–11.)  The blood sample used for GBI's toxicology screening was taken after Plaintiff was administered Fentanyl and Midazolam in the hospital.  (See id. at p. 10.)  On November 7, 2016, Walp prepared a report documenting the progress of the investigation in which he noted that the toxicology results indicated Plaintiff was driving under the influence of Fentanyl and Midazolam.  (Id. at pp. 10–11.)  He noted that he reached this conclusion because he had obtained and reviewed Plaintiff's hospital records and EMS report, and those records did not show Plaintiff was administered these drugs.  (Id. at p. 11.)

## II.     Plaintiff's Indictment and Arrest

As a result of Walp's investigation, on July 5, 2017, Plaintiff was indicted and charged with six crimes in Chatham County Superior Court: two counts of First Degree Vehicular Homicide (O.C.G.A. § 40-6-393); two counts of DUI Drugs (O.C.G.A. § 40-6-391); Reckless Driving (O.C.G.A. § 40-6-390); and Hit and Run (O.C.G.A. § 40-6-270).  (Id. at p. 12.)  A bench warrant was issued, and Plaintiff was arrested on July 25, 2017, and thereafter booked at the Chatham County Detention Center.  (Id.)  According to the Amended Complaint, at the bond hearing, false evidence was presented depicting Plaintiff to be a "drug addict, thief, and a danger to the community." (Id. at p. 13.)  As a result, Plaintiff was denied bail and remained incarcerated.  (Id.)  Despite pressure to take a plea deal, Plaintiff continually refused to plead guilty to the crimes with which he was charged.  (Id. at pp. 13–14.)

Plaintiff remained in jail until January 29, 2018, at which time he was bonded out after spending 188 days in the Chatham County Detention Center.  (Id. at p. 14.)  Plaintiff's criminal defense attorney eventually prevailed in showing the prosecutors that Plaintiff was not under the influence at the time of the accident and instead suffered a seizure while driving.  (Id. at pp.14–15.)

Thereafter, "rather than abandon the criminal case against [Plaintiff]," Officer Walp and the Office of the Chatham County District Attorney (the "DA"), sought a new indictment based on a new theory that Plaintiff was "driving a motor vehicle with a known seizure disorder without having taken his prescribed medication."  (Id. at p. 15.)  On August 1, 2018, Plaintiff was indicted a second time and charged with two counts of First Degree Vehicular Homicide (O.C.G.A. § 40-6-393); two counts of Reckless Driving (O.C.G.A. § 40-6-390); and Hit and Run (O.C.G.A. § 40-6-270).  (Id.)  Plaintiff's prosecution continued until April 18, 2022, when the State of Georgia ultimately moved to dismiss the case due to insufficient evidence.  (Id. at p. 18.)

III.    **Procedural History**

Plaintiff initially filed this lawsuit on October 4, 2022, (doc. 1), and filed his Amended Complaint on October 13, 2022, (doc. 4).  The Amended Complaint contains nine counts: (a) false arrest claims against Walp under 42 U.S.C. § 1983 (Count I) and against Walp and the City under O.C.G.A. § 51-7-1 (Count V); (b) malicious prosecution claims against Walp under 42 U.S.C. § 1983 (Count II) and against Walp and the City under O.C.G.A. § 51-7-40[2] (Count VI); (c) claims

---

[2]  The Amended Complaint actually states that Plaintiff's malicious prosecution claim is brought under O.C.G.A. § 51-7-3.  (Doc. 4, p. 32.)  That section of the Georgia Code, however, pertains to the definition of probable cause under Georgia law.  See O.C.G.A. § 51-7-3 ("Lack of probable cause defined.").  The Court reads Plaintiff's state law malicious prosecution claim to actually be brought under O.C.G.A. § 51-7-40, the pertinent section of the Code which provides a "[r]ight of action for malicious prosecution." O.C.G.A. § 51-7-40.  As this Code Section was likewise cited by Defendants in their Motion, the Court understands this to be a mistake in the Amended Complaint and will analyze the claim under the relevant code section, O.C.G.A. § 51-7-40.  (Doc. 8-1, p. 1.)

for "Monell Liability"[3] against the City (Count III) and against Chatham County (Count IV), both pursuant to 42 U.S.C § 1983; (d) an intentional infliction of emotional distress claim against Walp and the city (Count VII); (e) a negligent retention and training claims against the City (Count VIII); and (f) a claim for violations of the Georgia Open Records Act, O.C.G.A. § 50-18-70 *et seq.*, against the City and Chatham County (Count IX).  (Doc. 4, pp. 23–37.)  Defendants the City and Walp thereafter filed the at-issue Motion, moving to dismiss Counts I, II, III, V, VI, and VII.[4]  (See generally doc. 8-1.)  Plaintiff filed a Response, (doc. 14), and Defendants filed a Reply, (doc. 18).

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009).  However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678.  Rather, "[a] complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[3]  The Monell doctrine holds that a municipality can be liable under 42 U.S.C.S. § 1983.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  "To impose Monell liability, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." Underwood v. City of Bessemer, 11 F.4th 1317, 1333 (11th Cir. 2021).

[4]  Defendants' Motion does not address Counts IV, VIII, or IX.  (See generally doc. 8-1.)

liable for the misconduct alleged.'"  Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215 (11th Cir. 2012) (quoting Ashcroft, 556 U.S. at 678).

The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Ashcroft, 556 U.S. at 678 (internal quotation marks and citation omitted).  Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993); see also Neitzke v. Williams, 490 U.S. 319, 326–27 (1989) (explaining that Rule 12 allows a court "to dismiss a claim on the basis of a dispositive issue of law").

## DISCUSSION

I.    **Plaintiff's False Arrest Claims Are Due to Be Dismissed.**

The Court first addresses Plaintiff's false arrest claims (Counts I and V).  Defendants argue that Plaintiff's claims for false arrest are due to be dismissed both because the applicable statute of limitations bars the claim, and because it is not a valid claim for an arrest effectuated by a warrant.  (Doc. 8-1, p. 4–5.)  While Defendants' argument concerning the applicable statute of limitations would likely succeed,[5] the Court need not reach the merits of that argument in full because Plaintiff concedes that false arrest is not the appropriate claim.  (Doc. 14, pp. 16–17.)

---

[5]  The applicable statute of limitations is two years under Georgia law.  See O.C.G.A. § 9-3-33; Mullinax v. McElhenney, 817 F.2d 711, 716, n.2 (11th Cir. 1987) ("42 U.S.C.[] § 1988 directs courts in Section 1983 actions to apply the most appropriate and analogous state statute of limitations.").  Generally, "[f]or false-arrest claims, the two-year period begins to run from the date the plaintiff was detained pursuant to legal process."  Farr v. Hall Cnty., Ga., No. 2:11-CV-00074-RWS, 2011 WL 5921462, *2 (N.D. Ga. Nov. 28, 2011); see Wallace v. Kato, 549 U.S. 384, 397 (2007).  "This means that [Plaintiff] would have been detained by legal process on [July 25, 2017 (the date of his arrest),] and it would have been apparent to him that he potentially had a false arrest claim on [that date]."  See Johnson v. Cnty. of Paulding, 780 F. App'x.

Defendants argue that Plaintiff's false arrest claims are due to be dismissed because malicious prosecution is the only viable claim for an arrest effectuated by a warrant.  (Doc. 8-1, pp. 4–5.)  For an action under Section 1983, "[t]he issuance of a warrant . . . constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest."  Carter v. Gore, 557 F. App'x. 904, 906 (11th Cir. 2014).  The same holds true under Georgia law.  See Garner v. Heilig-Meyers Furniture Co., 525 S.E.2d 145, 146–47 (1999) ("If after the arrest . . . the action is carried on to a prosecution, an action for malicious prosecution *is the exclusive remedy*, and an action for malicious arrest will not lie.") (emphasis added).  Plaintiff does not dispute that his arrest, which occurred pursuant to a warrant after his indictment, and which resulted in his prosecution, constitutes legal process, and thus he concedes that "his claim is more properly characterized as a [m]alicious [p]rosecution claim." (Doc. 14, pp. 16–17.)  Accordingly, Defendants' Motion to Dismiss Plaintiff's claims for false arrest under Section 1983 (Count I) and under Georgia law (Count V) is due to be granted, and those claims are **DISMISSED**.

## II. Plaintiff Faced a Continuous Prosecution Sufficient to Support a Malicious Prosecution Claim.

Defendants argue that Plaintiff's Malicious Prosecution claims are due to be dismissed because "Plaintiff is time-barred from asserting a claim for malicious prosecution against Officer Walp to the extent it arises out of the initial indictment."  (Doc. 8-1, p. 8.)  They contend that because a second prosecution was brought against Plaintiff after the driving under the influence theory was dispelled, the initial prosecution stemming from Walp's report ended "at least prior to August 1, 2018."  (Id. at p. 8.)  Therefore, according to Defendants, the statute of limitations for

---

796, 799 (11th Cir. 2019).  However, Plaintiff did not bring suit until October 4, 2022, over five years after his initial arrest.  (Doc. 1).

claims arising out of the first indictment expired, "at the latest[,] on August 1, 2020"—more than two years prior to the filing of this suit.  (Id. at p. 9.)  Plaintiff, on the other hand, claims that he "faced a continuous prosecution from the date the first indictment was returned until [his] criminal case was finally dismissed on April 28, 2022," because the first indictment was dismissed "nolle prosequi" and "superseded" when he was "re-indicted" by a new indictment.  (Doc. 14, pp. 10–11; see doc. 14-1 ("Motion to Nolle Prosequi" filed by the assistant DA stating that the "conduct in this case has been re-indicted" and that the initial indictment has been "superseded"); see also doc. 4, p. 15 ("Rather than abandon the criminal case," Walp and the DA "sought a new indictment").)

For malicious prosecution claims brought under Georgia law, the applicable statute of limitations is two years.  See Banta v. Quik-Thrift Food Stores, 370 S.E.2d 3, 4 (Ga. Ct. App. 1988) (citing O.C.G.A. § 9-3-33).  For malicious prosecution claims brought under federal law, "[a]lthough Section 1983 does not contain a specific statute of limitations, 42 U.S.C.[] § 1988 directs courts in Section 1983 actions to apply the most appropriate and analogous state statute of limitations."  Mullinax, 817 F.2d at 716, n.2; see Wilson v. Garcia, 471 U.S. 261, 276–79 (1985) (holding that the state limitations statute governing "personal injury" claims must be applied in all Section 1983 actions).  Accordingly, the statute of limitations for both of Plaintiff's malicious prosecution claims is the two-year period set out in O.C.G.A. § 9-3-33.[6]  Smith v. Mitchell, 856 F. App'x 248, 249 (11th Cir. 1986) ("The limitations period for filing an action under [Section] 1983 is typically determined by the state-law period for personal injury torts, which, in Georgia, is two years.").

---

[6] Section 9-3-33 provides that "[a]ctions for injuries to the person shall be brought within two years after the right of action accrues."  O.C.G.A. § 9-3-33.

Under federal law,[7] accrual begins when a plaintiff has received a "favorable[ ]termination" to the legal proceedings brought against them.  Mitchell, 856 F. App'x at 249.  A favorable termination" is "a formal end to a prosecution in a manner not inconsistent with a plaintiff's innocence."  Laskar v. Hurd, 972 F.3d 1278, 1289 (11th Cir. 2020).  However, "when the prosecution remains ongoing" the plaintiff cannot be said to have a favorable termination.  Id. at 1293.

Under Georgia law, the statute of limitations for a malicious prosecution claim likewise begins to accrue from the date of a favorable termination to the criminal proceedings.  See Banta, 370 S.E.2d at 5 ("[A] suit for malicious prosecution must be brought within [two] years after the underlying criminal prosecution terminated *in plaintiff's favor*.") (emphasis added).  Georgia law further clarifies that a criminal prosecution has not terminated, "when substantially the same criminal prosecution as the one upon which [a plaintiff] founds his action is still in the courts, undisposed of."  Hartshorne v. Smith, 30 S.E. 666, 667 (Ga. 1898); Bailey v. Gen. Apartment Co., 229 S.E.2d 493, 494 (Ga. Ct. App. 1976) (noting that where a claim is discharged and the prosecutors "follow up with a new and valid prosecution . . . this amounts to a continuation of the original prosecution").  Put more specifically, where nolle prosequi is entered on an initial indictment and a new indictment is found, the "effect . . . is not necessarily the ending of the prosecution, but the continuance of the same."  Earlywine v. Strickland, 244 S.E.2d 118, 119 (Ga. Ct. App. 1978) (quoting Price v. Cobb, 3 S.E.2d 131, 133 (Ga. Ct. App. 1939)).; see also Price, 3 S.E.2d at 133 ("If another indictment is drawn for the same offense, it may be a different bill of indictment, and in this sense a new case, but it is the *same* prosecution.").

---

[7]  While Georgia law governs the applicable statute of limitations term for both of Plaintiff's Section 1983 and Georgia state law malicious prosecution claims, as far as accrual of the claims are concerned, *federal law* determines the date on which a statute of limitations begins to run for a Section 1983 claim.  See Mitchell, 856 F. App'x at 249.

The Amended Complaint alleges that Plaintiff faced continuous prosecution for First Degree Vehicular Homicide starting on July 5, 2017, when the initial indictment was filed, until the State of Georgia moved to dismiss the case on April 18, 2022.  (Doc. 4, pp. 12–18.)  The Amended Complaint specifically alleges that, "[r]ather than abandon the criminal case" against Plaintiff, Walp and the DA "sought a new indictment."  (Doc. 4, p. 15.)  Indeed, the Motion to Nolle Prosequi clarifies that the claims against Plaintiff were not dismissed, but the "conduct in this case ha[d] been re-indicted" and that the indictment had been "superseded."  (Doc. 14-1.)  As Plaintiff notes in his Response, if he had filed a malicious prosecution claim prior to the termination of the second prosecution, "the claim would have been futile" as the prosecution had not yet terminated in Plaintiff's favor, as is required for a viable malicious prosecution claim. (Doc. 14, p. 11.)  Accordingly, the Court finds that the re-indictment following the nolle prosequi dismissal constituted the same prosecution under both federal and Georgia law for statute of limitation purposes.  Accordingly, Plaintiff's claims were timely filed as the Amended Complaint alleges that the proceedings against Plaintiff did not terminate in his favor until August 18, 2022, placing his commencement of this action well within the statutory period.  Defendants' Motion to Dismiss Plaintiff's malicious prosecution claims on statute of limitation grounds is, therefore, denied.

Defendants further contend that Walp cannot be held liable for the second indictment because the alleged false statements he made were solely with regard to Plaintiff driving under the influence, which was irrelevant to the prosecution's second theory.  (Doc. 8-1, p. 9.)  As just discussed, however, simply because a superseding indictment is premised upon a different legal theory does not necessarily mean there has been a separate prosecution breaking the causal chain. See Price, 3 S.E.2d at 133.  This is particularly true where both the initial indictment and the

superseding indictment concern the same incident.  Here, the Amended Complaint sufficiently alleges that Walp caused the ongoing prosecution of Plaintiff related to the automobile collision. Specifically, the Amended Complaint states that, "[r]ather than abandon the criminal case against the plaintiff, Officer Walp and the Chatham County District Attorney's Office sought a new indictment under a completely different legal theory."[8]  (Doc. 4, p. 15.)  Construing the Amended Complaint in favor of Plaintiff, as the Court must at this stage, it plausibly alleges that this new theory came from Walp's investigation and that he assisted the District Attorney in bringing the second indictment.  While discovery may yield a different conclusion, at least at the Motion to Dismiss stage, the Court cannot say that Plaintiff has failed to plead a continuous prosecution with regard to his claim against Walp.

### III.  Walp is not Entitled to Qualified Immunity with Respect to Plaintiff's Section 1983 Malicious Prosecution Claim at this Stage of the Proceedings.

Defendants next contend that Plaintiff's Section 1983 malicious prosecution claims are due to be dismissed because Walp is entitled to qualified immunity.  (Doc. 8-1, pp. 5–8.)  Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir. 2002).  To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  Vinyard v. Wilson, 311

---

[8]  According to the Amended Complaint, the second indictment likewise had no basis in fact and ignored exculpatory evidence in Plaintiff's medical records.  Plaintiff was re-indicted for "driving a motor vehicle with a known seizure disorder without having taken his proscribed medication."  (Doc. 4, p. 15.)  However, according to the Amended Complaint, Plaintiff had never been diagnosed with a seizure disorder, had no family history of epilepsy, and had not been prescribed medication from his doctor that he was refusing to take.  (Id. at pp. 16–17.)

F.3d 1340, 1346 (11th Cir. 2002).  If a defendant can establish that he was acting within his discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Id.; see Bradley v. Tucker, No. 4:14-CV-165, 2015 WL 64944, at *8 (S.D. Ga. Jan. 5, 2015) ("[O]nce a defendant raises the issue of qualified immunity, the burden is on the plaintiff to marshal facts sufficient to show a plausible violation of clearly established law.").  Plaintiff does not contest, at least for purposes of Defendants' Motion to Dismiss, that Walp was acting within the scope of his discretionary authority when he drafted the report in his investigation stating that Plaintiff was driving under the influence.  (See generally doc. 14.)  Accordingly, Plaintiff now has the burden of showing that qualified immunity is not appropriate.

Determining whether qualified immunity is appropriate is a two-step inquiry.  First, the Court must determine "whether the plaintiff's allegations, if true, establish a constitutional violation."  Hope v. Pelzer, 536 U.S. 730, 736 (2002).  If a plaintiff plausibly alleges a constitutional violation, the Court then must consider whether the right violated was "clearly established." Vinyard, 311 F.3d at 1346; Saucier v. Katz, 533 U.S. 194, 201 (2001).

### A.    Plaintiff Has Plausibly Alleged a Constitutional Violation

Defendants contend that Plaintiff has failed to allege a constitutional violation because he has not made a valid claim of malicious prosecution.  (Doc. 8-1, pp. 8–9.)  To prevail on a malicious prosecution claim under Section 1983, a plaintiff must prove both "a violation of [his] Fourth Amendment right to be free of unreasonable seizures" and "the elements of the common law tort of malicious prosecution."  Paez v. Mulvey, 915 F.3d 1276, 1285 (11th Cir. 2019).  To make a prima facie case of malicious prosecution under the common law, a plaintiff must prove: (1) that the officer instituted or continued a criminal prosecution against him; (2) with malice and without probable cause; (3) that terminated in his favor; and (4) that caused damage to him.

<u>Williams v. Aguirre</u>, 965 F.3d 1147, 1157 (11th Cir. 2020).  The Eleventh Circuit Court of Appeals has recognized that there is "significant overlap" between a plaintiff's burden to demonstrate a Fourth Amendment violation and the common-law elements of malicious prosecution.  <u>Luke v. Gulley</u>, 975 F.3d 1140, 1144 (11th Cir. 2020).  "If a plaintiff establishes that a defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process, he has also established that the defendant instituted criminal process against him with malice and without probable cause." <u>Id.</u> (citing <u>Aguirre</u>, 965 F.3d at 1162–65).  Accordingly, the Court will apply the Eleventh Circuit's "simplif[ied]" standard for malicious prosecution, which requires the plaintiff to prove two elements: "(1) that the defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process and (2) that the criminal proceedings against him terminated in his favor." <u>Id.</u>  There is no dispute that the proceedings terminated in Plaintiff's favor.  (<u>See generally</u> docs. 8-1, 14, 21.)

A Fourth Amendment violation under a theory of malicious prosecution requires a seizure pursuant to legal process.  <u>Aguirre</u>, 965 F.3d at 1158.  To prevail on a claim of malicious prosecution, a plaintiff must show that "the judicial determination of probable cause underlying [the plaintiff's] seizure was invalid." <u>Id.</u> at 1162.  A plaintiff can do this by showing, "for example, [that] a . . . probable-cause determination is predicated solely on a police officer's false statements." <u>Manuel v. City of Joliet</u>, 580 U.S. 357, 367 (2017).  When this happens, "[l]egal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement." <u>Id.</u>  Plaintiff can show misstatements by showing "either that the officer who applied for the warrant should have known that his application failed to establish probable cause," or that "an official, including an individual who did not apply for [a] warrant, intentionally or recklessly made misstatements or omissions necessary" to support probable cause.  <u>Aguirre</u>, 965

F.3d at 1165.  Accordingly, once a claimant has established that an officer has made a false statement, the Court then must consider: (1) "whether there was an intentional or reckless misstatement or omission;" and (2) "whether probable cause would be negated if the offending statement was removed or the omitted information included."  <u>Paez</u>, 915 F.3d at 1287.

Plaintiff argues the Amended Complaint shows that Walp's report fabricated the theory that he was driving under the influence of Fentanyl and Midazolam.  (Doc. 14, pp. 9–10.) According to the Amended Complaint, Walp stated that he obtained Plaintiff's medical records from the hospital as well as the EMS report and that he reviewed them.  (<u>Id.</u> at p. 11.)  He then wrote in his report that "[n]owhere in either of these reports do they show that [Plaintiff] was administered ANY midazolam or fentanyl."  (<u>Id.</u>)  However, according to the allegations in the Amended Complaint, the hospital administered these drugs to Plaintiff just ten minutes after he was admitted to the hospital and the fact that the drugs were administered to Plaintiff was apparently well documented in Plaintiff's medical records.  (<u>See id.</u> at pp. 7–8, 10 (including, within the Amended Complaint, an image of part of a page from Plaintiff's hospital records which appears to document the timing and dosage of the administration of the at-issue drugs on the day of the accident).)  Thus, the Amended Complaint plausibly alleges that Walp wrote that Plaintiff must have been under the influence of certain drugs at the time of the accident despite having reviewed records that indicated those exact drugs were administered to Plaintiff *after* he was admitted to the hospital.

Nevertheless, Defendant maintains that "[a]t most" the Amended Complaint only alleges that Walp was "negligent in concluding that Plaintiff was illegally operating his vehicle while under the influence of drugs."  (Doc. 8-1, p. 7.)  The Court cannot agree.  "Because at this stage in the proceedings we must accept the facts as alleged in the complaint as true, we take as true that

14

the exculpatory information was known to [Walp] and [his] omission was made either intentionally or in reckless disregard of the truth." Paez, 915 F.3d at 1287; see Garrett v. Stanton, No. 08-cv-0175-WS-M, 2008 WL 4853388, at *3 (S.D. Ala. Nov. 7, 2008) (finding that, "[a]t the Rule 12(b) stage, the Court cannot assume . . . that [the defendant's alleged misidentification of the plaintiff—which led to her arrest, indictment, and prosecution—]was a mere mistake or negligence"). Construing the alleged facts in the light most favorable to the Plaintiff, as the Court must at this stage, this means that Walp either reviewed the medical records and blatantly lied about their contents in the report (to support his conclusion that Plaintiff must have taken the at-issue drugs before the accident), or he lied about having reviewed the medical records altogether. Both amount to a misstatement of fact. While Plaintiff may not have identified any specific facts showing a subjective intent to lie on Walp's part, the facts as alleged, at least at this stage, are sufficient to create an inference that Walp intentionally or recklessly lied in his report. See Aguirre, 965 F.3d at 1166 (plaintiff's allegations showing inconsistent versions of events "support[ed] an inference that *someone* [was] lying" and were sufficient to satisfy the requirement that the misstatements were intentionally or recklessly made); Kingsland v. City of Miami, 382 F.3d 1220, 1226–28 (11th Cir. 2004) (holding that officers' actions during and after an arrest provided circumstantial evidence that the officers fabricated evidence).

Finally, pursuant to the facts as alleged in the Amended Complaint, if Walp's misstatements were corrected, there would have been no probable cause to justify Plaintiff's prosecution. Plaintiff sufficiently alleges that Walp's report led to his indictment. (Doc. 4, p. 9.) Common sense dictates that, had Walp's report reflected that the drugs Plaintiff was allegedly under the influence of were administered *after* the accident, there would not have been probable cause to find that he was driving under the influence of those drugs and thus to indict him.

15

**B.      The Amended Complaint Plausibly Alleges that Walp Violated Clearly Established Law When He Made False Statements in the Investigation Report**

Because the Amended Complaint has alleged a Fourth Amendment malicious prosecution claim, the Court must now ask whether that constitutional right was clearly established before denying qualified immunity.  A constitutional right is clearly established "only if its contours are 'sufficiently clear that a reasonable official would understand what he is doing violates that right.'" Vaughan v. Cox, 343 F.3d 1323, 1332 (11th Cir. 2003) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  To determine whether the officer violated a clearly established right, the Court must consider "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

"The law [is] clearly established . . . that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen." Jones v. Cannon, 174 F.3d 1271, 1285 (11th Cir. 1999).  It is likewise clearly established that this prohibition "extends to any officer who provided information material to the probable cause determination." Aguirre, 965 F.3d at 1169 (internal quotations omitted); see also Garmon v. Lumpkin Cnty., 878 F.2d 1406, 1408, 1410 (11th Cir. 1989) (holding that a police officer who directed another agent to file an infirm warrant affidavit was liable for the ensuing unconstitutional seizure).

Defendants, nevertheless, argue that Walp possessed at least "arguable probable cause" because he received a positive toxicology screening concerning Plaintiff.  (Doc. 8-1, p. 7.)  This argument strains credulity.  The mere fact that Plaintiff's toxicology screening was positive for some substances does not absolve Walp of the material misstatement in the report that "[n]owhere . . . [in Plaintiff's medical records] show[s] that [Plaintiff] was administered ANY midazolam or fentanyl."  (Doc. 4, p. 11.)  Moreover, if Defendants' argument to this effect is simply that, by

having a positive toxicology result on a suspect, an officer should be absolved of lying about or failing to consider exculpatory evidence related to the toxicology results, the Court disagrees. The Eleventh Circuit has held that, when considering the question of qualified immunity, an officer cannot "investigate selectively"; that is, officers are not permitted "to turn a blind eye to exculpatory information that is available to them." Kingsland, 382 F.3d at 1228–29 (denying qualified immunity where the complaint alleged that police lied about plaintiff smelling of cannabis following a wreck where she was disoriented, and then failed to search her vehicle or use drug-sniffing dogs before arresting her for driving under the influence); Alcocer v. Bulloch Cnty. Sheriff's Off., No. 6:15-cv-94, 2019 WL 2207659, at *7–9 (S.D. Ga. May 19, 2019) (denying qualified immunity for officer who arrested individual after receiving a notification from ICE that the individual was subject to removal proceedings despite having evidence readily available that suggested the plaintiff had legal status). Therefore, because Plaintiff has alleged that Walp consulted medical records indicating that the drugs detected in the toxicology report were administered at the hospital after the accident (and thus were by no means necessarily in Plaintiff's system at the time of the accident), the Court cannot find that the toxicology report gave Walp "arguable probable cause."

In sum, in light of this "uncontroverted and well-established rule" prohibiting falsifying information to manufacture probable cause, Aguirre, 965 F.3d at 1169, the Court finds that Plaintiff has plausibly alleged Walp violated clearly established law when he reported that Plaintiff's medical records showed that he had not been administered Fentanyl and Midazolam at the hospital, resulting in Plaintiff's indictment for driving under the influence. Accordingly, Defendants' Motion to Dismiss on qualified immunity grounds is denied.

## IV.    Walp is not Entitled to Absolute Immunity.

Defendants also raise, for the first time in their Reply brief, an argument that Walp is entitled to absolute immunity from Section 1983 liability.[9]  (Doc. 18, pp. 2–4.)  According to Defendants, Walp is entitled to absolute immunity for the false statements made in his investigation report because it was used to secure Plaintiff's indictment in front of a grand jury and not for "any type of pre-indictment arrest or seizure in violation of the Fourth Amendment." (Id. at p. 3.)  The Court disagrees.

Absolute immunity applies to functions "intimately associated with the *judicial* phase of the criminal process."  Malley v. Briggs, 475 U.S. 335, 342 (1986).  On the other hand, absolute immunity does not apply "to functions that are not 'intimately associated with the judicial phase of the criminal process,' such as *investigative or administrative tasks*.'"  Monaghan v. Moates, No. 1:20-CV-440-RAH, 2023 WL 2583273, at *6 (M.D. Ala. Mar. 20, 2023) (quoting Captain

---

[9]  The Court "is not required to consider new arguments raised for the first time in a reply brief."  Tindall v. H & S Homes, LLC, No. 5:10–CV–044(CAR), 2011 WL 5007827, at *2 (M.D. Ga. Oct. 20, 2011) (citing Hill v. Oil Dri Corp. of Ga., 198 F. App'x. 852, 856 (11th Cir. 2006)).  This is because raising new arguments in a reply brief generally deprives the opposing party of an opportunity to respond to such arguments.  Roche Diagnostics Corp. v. Priority Healthcare Corp., 2:18-CV-01479-KOB, 2019 U.S. Dist. LEXIS 190416, *5 (N.D. Ala. Feb. 28, 2019); Cost Recovery Servs. LLC v. Alltell Commc'ns, Inc., 259 F. App'x 223, 226 (11th Cir. 2007).  However, while raising new issues in a reply brief is improper, it is within the court's discretion to consider the new arguments "despite [their] procedural shortcomings." ABCO Premium Fin. LLC v. Am. Int'l Group, Inc., No. 11-23020-CIV-SCOLA/BANDSTRA, 2012 WL 3278628, at *4 (S.D. Fla. Aug. 9, 2012).  Defendants candidly acknowledged that this issue was not raised in their initial Motion but stated in their Reply that they "have no objection to allowing Plaintiff[] twenty [sic] (21) days to respond to the absolute immunity issue."  (Doc. 18, p. 2 n.1.)  Despite this note, Plaintiff has not filed or moved to file a sur-reply in response to Defendants' Reply.  Defendants contend that the Court should nevertheless address their arguments because the absolute immunity defense "should be applied at the earliest possible stage of litigation."  (Id. (citing Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1022 (11th Cir. 2001)).)  Notwithstanding Plaintiff's failure to respond on the issue, the Court finds that its consideration of the absolute immunity arguments will not prejudice Plaintiff because, for the reasons explained in this subsection, Defendant Walp cannot prevail on an absolute immunity defense at this time. See Tindall, 2011 WL 5007827, at *2 (ruling on the defendants' arguments raised for the first time in a reply, even without a sur-reply from the plaintiff, because it ruled against the arguments and because, "even though the matters were not appropriately raised . . . some of [d]efendants' arguments will, more likely than not, come up again").

Jack's Crab Shack, Inc. v. Cooke, No. 21-11112, 2022 WL 4375364, at *6 (11th Cir. Sept. 22, 2022)) (emphasis added).

While absolute immunity traditionally applies to judicial officers (such as prosecutors), absolute immunity *can* also extend to executive officers (such as police officers) in the limited context of performing some *judicial* function, such as testifying in court.  See, e.g., Briscoe v. LaHue, 460 U.S. 325, 342–46 (1983); Kelly v. Curtis, 21 F.3d 1544, 1553 (11th Cir. 1994); but see Malley, 475 U.S. at 342–43 ("[An] officer applying for a warrant . . . while a vital part of the administration of criminal justice, is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment.").  Indeed, all the case law upon which Defendants rely in their briefing falls within the context of officers seeking absolute immunity for testifying at trial or in grand jury proceedings.  See Jones, 174 F.3d at 1286 (finding officer "absolutely immune" for allegedly false testimony offered at grand jury proceedings); Briscoe, 460 U.S. at 342–46 (emphasizing the importance of absolute immunity for police officer witnesses); Kelly, 21 F.3d at 1553 ("[T]estimony before a grand jury is protected by absolute immunity.").  The challenged action here, however, was not testimony in Plaintiff's grand jury proceedings, but an allegedly falsified report that was used as a basis to support Plaintiff's indictment and subsequent arrest.  Indeed, there is nothing in the Amended Complaint about Walp testifying at the grand jury indictment so as to trigger absolute immunity like in the cases cited by Defendants.[10]  (See generally doc. 4.)

---

[10]  The Court acknowledges that the Amended Complaint does allege that "[t]he indictment would not have been returned but for Officer Walp's constitutionally deficient investigation, false statements, *and false testimony*."  (Doc. 4, p. 12 (emphasis added).)  The Amended Complaint never provides the context in which Walp provided the allegedly false "testimony" (indeed, the phrase "grand jury" is never used in the Amended Complaint).  However, even if Walp did offer testimony at grand jury proceedings, he nonetheless is not entitled to absolute immunity from Plaintiff's claims because there is no indication that he gave false testimony that in any way differed from the at-issue misstatements he had already included in his investigation report.  See Hicks, 2021 WL 1601750, at *5 ("Were it the case that [plaintiff] was solely

Defendants nevertheless attempt to characterize Walp's allegedly false report as being akin to testimony before the grand jury.  (Doc. 18, p. 3 ("Put another way, Plaintiff alleges that Officer Walp is liable because he provided false information *to the grand jury*.").)  The Court disagrees. Indeed, in the case Defendants cite in support, Jones v. Cannon, the Eleventh Circuit explicitly rejected this notion and held that "investigative officers cannot cloak their misconduct during an investigation in absolute immunity" *even where* the falsified evidence is presented or testified about in grand jury proceedings.  174 F.3d at 1290; see also Todd v. Hicks, No. 2:20-cv-1006-RAH-KFP, 2021 WL 1601750, at *3 n.1 (M.D. Ala. Apr. 23, 2021) ("Whereas a grand jury witness is afforded absolute immunity from [Section] 1983 claims based on his or her witness testimony, conduct undertaken before serving as a witness is not afforded the same protection."); Monaghan v. Moates, No. 1:20-CV-440-RAH, 2023 WL 2583273, at *6 (M.D. Ala. Mar. 20, 2023) (denying absolute immunity for officers who allegedly suborned false testimony used in an investigative report even when they testified about that report in grand jury proceedings).  Accordingly, the use of Walp's allegedly false report in the grand jury proceedings does not convert his alleged misconduct into testimony entitled to absolute immunity.  In other words, while Walp could still be entitled to absolute immunity for actually testifying in court, the use of the report itself in the grand jury proceedings "does not retroactively transform that work from administrative into the prosecutorial." Jones, 174 F.3d at 1290; see also Monghan, 2023 WL 2583273, at *6–7 (denying absolute immunity for officers who allegedly falsified investigative report that was later used to secure the plaintiff's indictment).  Accordingly, Defendants' Motion to Dismiss on absolute immunity grounds is denied.

---

alleging that [defendant-officer's] grand jury testimony produced the indictment, absolute immunity would bar this claim.  But [plaintiff's] challenge as it concerns [defendant-officer's] preparatory activity, including his instigation of the case and alleged fabrication of probable cause in the report, goes beyond [defendant-officer's] grand jury testimony and does not enjoy absolute immunity.").

## V.   Defendants' Arguments Regarding Plaintiff's Claims Against the City Fail.

### A.   Defendants Have not Provided the Court a Basis to Dismiss Plaintiff's Section 1983 Claim Against the City.

Defendants next argue that Plaintiff's Count III, Section 1983 malicious prosecution claim, against the City is due to be dismissed because Plaintiff "has not shown that he suffered a constitutional harm," and because he cannot prove the existence of an underlying tort.  (Doc. 8-1, pp. 9–10.)  For the reasons discussed in Discussion Section III.A, supra, these arguments fail. Plaintiff has adequately pled a constitutional violation by alleging that Walp falsified his investigative report which led to Plaintiff's prosecution.  Thus, insofar as Defendants' argument against the City's liability is premised on the absence of an underlying constitutional infraction, the Court denies Defendants' Motion.[11]  (Id.)

### B.   Defendants Have not Provided the Court a Basis to Dismiss Plaintiff's State Law Malicious Prosecution Claim Against the City under Sovereign Immunity.

Defendants additionally argue that Plaintiff's state law malicious prosecution claim (Count VI) against the City is due to be dismissed because Plaintiff cannot show the existence of an underlying tort, and because the City "is generally entitled to sovereign immunity."  (Doc. 8-1, p. 10.)  For the same reason the Court finds that Plaintiff has sufficiently pled an underlying constitutional violation to support a federal malicious prosecution claim, it likewise finds that Plaintiff has sufficiently pled an underlying tort to support its state law malicious prosecution claim.  Thus, the Court turns to the Defendants' claim of sovereign immunity.

---

[11] While the specific arguments raised in Defendants' Motion fail, the Court notes that it has serious doubts as to whether Plaintiff's claims against the City could survive under Monell v. Department of Social Services, 436 U.S. 658 (1978).  Defendants reference "Monell Liability" in their Motion to Dismiss, but they offer no argument applying Monell and its progeny and, instead, simply argue that there is no underlying tort.  (See doc. 8-1, pp. 9–10.)  Accordingly, the Court will not undertake a Monell-based analysis *sua sponte* absent an argument from Defendants that the City cannot be held liable under Monell.

Plaintiff argues that he has adequately pled facts that show the City's sovereign immunity as to this claim has been waived.[12]  (Doc. 14, pp. 13–14.)  Under Georgia law, municipal corporations—such as the City—are protected by sovereign immunity unless that immunity is waived by the General Assembly.  City of Atlanta v. Mitcham, 769 S.E.2d 320, 322 (Ga. 2015).  One way the General Assembly has established that immunity may be waived is through the municipality's purchase of liability insurance.  O.C.G.A. § 36-33-1(a); Lewis v. City of Marietta, No. 1:21-CV-01883-ELR, 2022 U.S. Dist. LEXIS 239822, at *20 (N.D. Ga. Dec. 19, 2022) (citing O.C.G.A. §§ 36-33-1, et seq.).  If the insurance policy "covers an occurrence for which the defense of sovereign immunity is available," immunity is waived to the extent of the limits of the municipality's insurance policy.  O.C.G.A. § 36-33-1(a).

When a plaintiff sues a municipality under state law, "any waiver of sovereign immunity must be established by the party seeking to benefit from that waiver."  Ratliff v. McDonald, 756 S.E.2d 569, 574 (Ga. Ct. App. 2014).   Here, Plaintiff has specifically alleged that, "[u]pon information and belief, the City has purchased liability insurance to protect the City and its employees for damages arising from acts or omissions of its law enforcement officials committed during the course and scope of their employment."  (Doc. 14, pp. 13–14 (quoting doc. 4, pp. 2–3).)  Defendants have not provided any argument as to why Plaintiff's allegations are insufficient[13]

---

[12]  The Court reads Defendants' Motion as only raising a state law sovereign immunity defense as to the state law malicious prosecution claim.  The Court notes, for the sake of thoroughness, that principles of sovereign immunity do not shield municipalities from liability under Section 1983.  Martinez v. California, 444 U.S. 277, 284 n.8 (1980) ("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law."); Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 405 F.3d 1298, 1315 (11th Cir. 2005) ("By including municipalities within the class of 'persons' subject to liability for violations of the Federal Constitution and laws, Congress—the supreme sovereign on matters of federal law—abolished whatever vestige of the State's sovereign immunity the municipality possessed.") (quoting Howlett v. Rose, 496 U.S. 356, 376 (1990)).

[13]  Indeed, the only support Defendants offer is a citation to Campbell v. Goode, 695 S.E.2d 44, 46–47 (Ga. Ct. App. 2010).  (See doc. 8-1, p. 10.)  The plaintiff in Campbell claimed that the city-defendant had waived its sovereign immunity to the extent that it had purchased liability insurance, but in doing so he erroneously

and there is no copy of the alleged policy in the record for the Court's consideration at this time.[14]

Therefore, accepting the allegations in the Amended Complaint as true and construing them in the light most favorable to Plaintiff, as the Court must at this stage, the Court cannot say that the tortious acts of the City's officers were not covered by the alleged insurance policy.  See Malone v. Johnson, No. 1:22-cv-00555-SDG, 2023 WL 2763144, at *10 (N.D. Ga. Mar. 31, 2023) (denying motion to dismiss where the complaint alleged the city had insurance policy which covered the tortious actions of its police officers); Williams v. City of Atlanta, No. 1:15-CV-02679-RWS, 2016 WL 1242087, at *7 (N.D. Ga. Mar. 30, 2016) (finding an allegation in the complaint that "[a]ll [d]efendants named herein are covered under policies of insurance for the negligent acts complained of herein" was sufficient to defeat a motion to dismiss on sovereign immunity grounds).  At this stage, Plaintiff has sufficiently pleaded the existence of an insurance policy that waives the City's immunity.  See Malone, 2023 WL 2763144, at *10 ("[The plaintiff] has sufficiently pleaded the existence of an insurance policy that waives the City's immunity.  The City remains free to assert its entitlement to sovereign immunity at summary judgment.").  Accordingly, Defendants' Motion to Dismiss on sovereign immunity grounds is denied.

---

relied on O.C.G.A. § 33-24-51 in support of his argument. 695 S.E.2d at 47.  In rejecting Plaintiff's waiver claim, the court explained that the cited statute provides for a waiver of sovereign immunity only where liability insurance is purchased to cover damages arising from the use of a motor vehicle, and that plaintiff's claims did not relate to the use of a motor vehicle.  Id.  O.C.G.A. § 33-24-51 has not been raised in this case, and Plaintiff's only claim of waiver comes under the general waiver provisions of O.C.G.A. § 36-33-1(a).  Accordingly, the Court is not swayed by Defendants' reliance on Campbell.

[14] While it is unclear whether the Court would be permitted, under federal procedural rules, to consider the insurance policy if Defendants had provided it in support of their Motion, the Court notes that Georgia courts have considered insurance policies in similar contexts.  See Summerour v. City of Monroe, 870 S.E.2d 848, 852 n.3 (Ga. Ct. App. 2022) (providing support, in dicta, for considering an insurance policy outside the "four corners of the [c]omplaint" in ruling on motion for judgment on the pleadings); Sharma v. City of Alpharetta, 865 S.E.2d 287, 290–92 (2021), cert. denied (June 22, 2022) (considering an insurance policy when ruling on a motion to dismiss).

**VI.   Plaintiff's Intentional Infliction of Emotional Distress Claim against the City Is Sufficient to Survive Defendant's Motion to Dismiss.**

Finally, Defendants move to dismiss Plaintiff's claim against the City for intentional infliction of emotional distress ("IIED") because, they argue, "Plaintiff has failed to allege any 'extreme or outrageous' conduct by [the City]" to support such a claim.  (Doc. 8-1, p. 11.)  Under Georgia law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress."  Yarbray v. S. Bell Tel. & Tel. Co., 409 S.E.2d 835, 837 (Ga. 1991).  Notably, Defendants do not challenge whether Walp would be liable for a claim of IIED, and they instead argue simply that the Amended Complaint does not allege facts to support an IIED claim against *the City* because it has "alleged only that *Officer Walp* has engaged in such conduct."  (Doc. 8-1, p. 11 (emphasis added).)

In his Response, Plaintiff argues that the City is responsible for Walp's actions as his employer and can thus be found liable for an IIED claim under a theory of respondeat superior.  (See doc. 14, pp. 14–15.)  The City did not address the applicability of respondeat superior at all in its Reply, (see doc. 18), and neither party provided supporting caselaw regarding whether the City can be held vicariously liable for any intentional infliction of emotional distress committed by Walp.  The Court is aware of authority supporting Plaintiff's position that a city employee's actions may be imputed to their city employer.  See, e.g., Canberg v. City of Toccoa, 567 S.E.2d 21, 23 (Ga. Ct. App. 2002) (finding that liability for IIED claims based on acts committed by the city's firefighters could be imputed to the city); Johnson v. Allen, 613 S.E.2d 657, 663 (Ga. Ct. App. 2005) ("[A] jury could determine that [defendant-employer] is responsible for [defendant-employee's] alleged actions in this case pursuant to respondeat superior.").  The Court has not located, and the City has failed to provide, any caselaw that would preclude an IIED claim against an employer for its employee's actions.  (See generally docs. 8-1, 18.)  Because Defendants only

moved for dismissal of Plaintiff's IIED claim against the City on this basis, and because they have failed to provide any supporting legal authority showing vicarious liability is inapplicable, the Court must deny Defendants' Motion to Dismiss Plaintiff's IIED claim against the City.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part**.  The Court finds that the Amended Complaint plausibly alleges that Walp violated clearly established law under the Fourth Amendment's prohibition against unlawful searches and seizures by falsely claiming, in his investigation report, that Plaintiff was under the influence of Fentanyl and Midazolam while driving.  Accordingly, the Court finds that Plaintiff pled a prima facie claim of malicious prosecution against Walp under the Fourth Amendment, and the Court **DENIES** Defendants' Motion to Dismiss that claim based on qualified immunity.  (Doc. 8-1, pp. 5–9.)  The Court additionally finds that the Amended Complaint plausibly alleges that Walp's false report, drafted prior to Plaintiff's indictment, directly led to Plaintiff's continuing prosecution, and, accordingly, the Court **DENIES** Defendants' Motion to Dismiss on absolute immunity grounds. (Doc. 18, pp. 2–4.) The Court also rejects Defendants' arguments for dismissal of Plaintiff's malicious prosecution and IIED claims against the City and, therefore, **DENIES** Defendants' Motion to Dismiss those claims.  (Doc. 8-1, pp. 9–11.)  However, the Court agrees that Plaintiff's false arrest claims should be dismissed.  Accordingly, the Court **GRANTS** Defendants' Motion on those claims and **DISMISSES** Counts I and V entirely.

**SO ORDERED**, this 21st day of July, 2023.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA