**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| BRADLEY FEHRLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action File No. |
| | ) | |
| THE MAYOR AND ALDERMEN OF THE | ) | 4:22-cv-00232-RSB-CLR |
| CITY OF SAVANNAH, CHATHAM | ) | |
| COUNTY, and ROBIE WALP, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.     INTRODUCTION

This case arises from Defendants' illegal and unconstitutional arrest and prosecution of Bradley Fehrle ("Plaintiff"). (Doc. 4, Amended Complaint). The fatal car accident of August 21, 2016 occurred because Plaintiff had a seizure while driving a motor vehicle. The seizure was a terrible, unforeseeable event. Plaintiff did not violate any Georgia criminal laws on August 21, 2016.

A gross miscarriage of justice occurred and the Plaintiff was wrongfully incarcerated for 188 days. As a result of Defendants' actions the Plaintiff spent 1,748 days suffering the anxiety, stress, and humiliation of facing prosecution for crimes he did not commit. At all relevant times during Plaintiff's prosecution there was no actual or arguable probable cause to believe that Plaintiff had committed the crimes that Defendant Robie Walp ("Walp") accused him of.

### II.     STATEMENT OF FACTS

In accordance with Local Rule 56.1 Plaintiff is filing a separate response to Defendants' Statement of Facts. Plaintiff is also filing his own Statement of Facts for the Court's consideration.

### III. PROCEDURAL HISTORY AND CLAIMS PRESENTED

Plaintiff was actively prosecuted until April 18, 2022 when the State of Georgia moved to dismiss the case against him. (Motion to Nolle Prossequi). Plaintiff filed the present civil rights lawsuit several months later on October 4, 2022. (Doc. 1).

The Mayor and Aldermen of the City of Savannah ("Savannah") and Walp (collectively referred to hereinafter as "defendants") filed their Motion for Summary Judgment on July 12, 2023 (Doc. 46). At this time the 6 operative claims are a 42 U.S.C. § 1983 malicious prosecution claim against Walp (Count II), a 42 U.S.C. § 1983 *Monell* claim against Savannah (Count III), a malicious prosecution claim under Georgia law against Walp and Savannah (Count VI), an intentional infliction of emotional distress claim against Walp and Savannah (Count VII), a negligent retention and training claim against Savannah (Count VIII), and a claim against Savannah for violations of the Georgia Open Records Act (County IX).[1]

With the exception of the state law tort claims against Savannah which are barred by sovereign immunity,[2] Plaintiff respectfully submits that Defendants' Motion for Summary Judgment should be denied.

---

[1] Plaintiff and Defendant Chatham County filed a Joint Notice of Settlement on July 9, 2023. (Doc. 45). As reflected therein, Plaintiff expects to file a dismissal with prejudice of all claims against Chatham County in the very near future.

[2] Plaintiff does not contest that the state law claims against Savannah for malicious prosecution, intentional infliction of emotional distress, and negligent retention and training are subject to dismissal. No evidence was obtained during the discovery process that would support a waiver of sovereign immunity under Georgia law.

## IV.   ARGUMENT AND CITATIONS OF AUTHORITY

### 1.   <u>Motion for Summary Judgment Standard</u>

The Court is very familiar with the summary judgment standard. Plaintiff only cites to the following Eleventh Circuit decisions to emphasize that issues of credibility, weighing of the evidence, and drawing legitimate inferences from the evidence are jury functions:

> In other words, "[t]he District Court [must] consider all evidence in the record when reviewing a motion for summary judgment—pleadings, depositions, interrogatories, affidavits, etc.—and can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists." *Tippens v. Celotex Corp.,* 805 F.2d 949, 952 (11th Cir. 1992) (internal citation and quotation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

*Strickland v. Norfolk Southern Ry.,* 692 F.3d 1151, 1154 (11th Cir. 2012).

> An inference must be "reasonable" to defeat a motion for summary judgment. *Daniels v. Twin Oaks Nursing Home,* 692 F.2d 1321, 1326 (11th Cir. 1982). A reasonable inference is one that a "reasonable and fair-minded [person] in the exercise of impartial judgment might draw from the evidence." *Id.* (internal quotation marks omitted). Reasonable inferences may rest in part on conjecture, "for an inference by definition is at least partially conjectural." *Id.* But a jury cannot be "allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility." *Id.* "Such an inference is infirm because it is not based on the evidence." *Id.*

*Pussinen v. Target Corp.,* 731 Fed. Appx. 936, 938 (11th Cir. 2018).

### 2.   <u>Plaintiff did not Commit any Crimes on August 21, 2016</u>

Simply stated, Plaintiff did not commit any crimes on August 21, 2016 and no reasonable police officer in Walp's position could have thought otherwise. Georgia law defines a "crime" as follows:

(a) A "crime" is a violation of a statute of this state in which there is a joint operation of an act or omission to act and intention or criminal negligence.

(b) Criminal negligence is an act or failure to act which demonstrates a willful, wanton, or reckless disregard for the safety of others who might reasonably be expected to be injured thereby.

O.C.G.A. § 16-2-1.

Georgia law also provides that "[a] person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." O.C.G.A. § 16-2-2. Thus, in order to prove that Plaintiff committed any of the crimes set forth in the indictments the Defendants would have to show that it was not an accident, and Plaintiff acted intentionally or with criminal negligence. Viewing the evidence in the light most favorable to him, Plaintiff respectfully submits that the Defendants have not made such a showing.

The tragic accident that killed Shannon Bailey ("Bailey") occurred because the Plaintiff had a seizure while driving a motor vehicle. The evidence supports Plaintiff's argument that this was an inherently unforeseeable event. At the time of the August 21, 2016 accident the Plaintiff was 34 years old. During those 34 years he had never previously had a seizure while driving. Plaintiff had never been diagnosed with epilepsy or other seizure disorder. At all times Plaintiff, who had no prior criminal history, was facing the prospect of going to prison for 15+ years. At all relevant times during the prosecution there was no actual or arguable probable cause to believe that Plaintiff had committed the crimes Walp accused him of.

The basic theory of the first indictment was that Plaintiff caused the fatal car accident because he was under the influence of Fentanyl and Midazolam. Plaintiff should never have been charged with those crimes. Plaintiff was not under the influence of any drugs at the time of the accident, and the only reason his toxicology results ultimately came back positive for Fentanyl and

Midazolam is that those medications were administered to him almost immediately upon arriving at the hospital ER. A gross miscarriage of justice occurred when Plaintiff was arrested and prosecuted under the first indictment for allegedly committing DUI, vehicular manslaughter, and related crimes.

The basic theory of the second indictment was that Plaintiff recklessly caused the fatal car accident because he was driving "with a known seizure disorder" and "without taking his prescribed medication." Plaintiff should never have been charged with those crimes. Plaintiff had not been diagnosed with a seizure disorder at the time of the August 21, 2016 accident. He was not refusing to take prescribed medication. A gross miscarriage of justice occurred when Plaintiff was prosecuted under the "seizure theory" for over 3 years, when reviewing the available medical records and/or talking to Plaintiff's neurologist would have demonstrated that the charges were completely unwarranted. (Doc 37, Declaration of Dr. Schere).

### 3. <u>**Plaintiff's Prosecution Would Never Have Happened if not for Walp Obtaining an Invalid Search Warrant**</u>

Walp applied for a search warrant on August 23, 2016 seeking the Plaintiff's complete medical records and blood samples from Memorial University Medical Center. The factual basis for the search reads as follows:

On 8/21/2016 I was contacted by SGT Fletcher in reference to a fatal injury wreck in the 1200 blk. of E. Anderson St. involving a single vehicle. I responded to the scene where I observed a set of tire marks beginning against the north side curb of Anderson St. near 1208 E. Anderson St. These marks are in direct line with a vehicle traveling in a southeasterly direction crossing Anderson St. The tire marks continued in this direction until the vehicle left the roadway near 1233 E. Anderson St. Once the car left the road way and continued east bound through a palm tree, bushes, and fences until stopping upside down and final rest against the North West corner of 1239 E. Anderson St. The distance traveled and all of the damage present indicates Mr. Fehrle was traveling at a high rate of speed. In addition prior to the beginning of his tire marks he drove at a high rate of speed between two vehicles that were traveling east on Anderson St. almost causing a separate collision with these two vehicles. I was not able to speak to Mr. Fehrle at the Memorial Medical Center due to him being sedated at the time I arrived at the hospital.

The blood samples taken at the time of Mr. Fehrle's arrival at Memorial Hospital will show if he was under the influence of alcohol and/or drugs at the time of the collision.

(Doc. 46-4, Search Warrant, page 1).

Plaintiff respectfully submits that nothing in that narrative provides sufficient probable cause to obtain a search warrant for blood samples. The Georgia Supreme Court's discussion in *Hughes v. State,* 296 Ga. 744, 770 S.E.2d 636 (2015) illustrates why this is true:

> [W]e conclude that the officers in this case had probable cause to believe that Hughes had been driving under the influence of drugs. **The officers had reason to believe that Hughes had driven through a red light and caused a fatal accident. They had reason to think — based on their observations of Hughes at the scene of the accident — that Hughes was under the influence of some intoxicant. And they knew that Hughes had a number of unknown pills on his person. Standing alone, any one of these circumstances would not be enough for a reasonable officer to conclude that Hughes probably had been driving under the influence. Indeed, each of these circumstances is susceptible of reasonable explanations other than driving under the influence, and although each circumstance is consistent with driving under the influence, an innocent explanation for each circumstance might be more probable.** For instance, the running of the red light and the accident that followed could reasonably have been attributed to Hughes having been sleep deprived, especially considering the early-morning hour of the accident and that he appeared sleepy afterwards. His unsteadiness and red eyes could have been chalked up to the deployment of an air bag in the collision. And his possession of pills does not necessarily mean that Hughes had taken any. But again, we do not consider any fact or circumstance standing alone. Taken together, a reasonable officer could conclude, we think, that driving under the influence was an equally or more probable explanation for the facts and circumstances known to the officers than an improbable coincidence of multiple innocent explanations. See, e.g., *Walker v. City of Huntsville,* 310 Fed. Appx. 335, 338 (III) (11th Cir. 2009); *State v. Underwood,* 283 Ga. 498, 500 (661 SE2d 529) (2008); *Firsanov v. State,* 270 Ga. 873, 874 (3) (513 SE2d 184) (1999).

*Hughes v. State,* 296 Ga. 744, 750, 770 S.E.2d 636, 641 (2015) (emphasis added).

The direction the Georgia Supreme Court gave to law enforcement officers in 2015 is that standing alone, evidence that an individual violated traffic laws and caused a fatal accident is not sufficient to conclude that the driver was under the influence. Plaintiff believes this was the law prior to 2015, but *Hughes, supra,* made it explicit and no competent police officer in August 2016 could have thought it was proper to reflexively get a search warrant for blood simply because a

bad accident had occurred. To do so would be to get a search warrant based on pure speculation, in violation of the United States Constitution.

Walp's warrant affidavit certainly contains allegations about the August 21, 2016 accident and Fehrle driving fast, but there is not actually any evidence therein which should lead an officer to conclude that Plaintiff was DUI. No one has ever suggested that Plaintiff was exhibiting signs of drug or alcohol intoxication immediately after the accident. No one has ever suggested that they smelled an odor of alcohol or any other intoxicating substances at the accident scene. There was also no physical evidence at the accident scene that would suggest the driver had possibly been using drugs, e.g. prescription bottles in the car or pills in Plaintiff's pockets. (Deposition of Walp, 44:14-44:23).

Plaintiff respectfully submits that Walp took it upon himself to get a search warrant without stopping to consider whether there was actually any evidence that Plaintiff was driving under the influence. He went on a fishing expedition and obtained an invalid search warrant when he knew or should have known that the facts did not support his search. No reasonably competent officer could have thought the search warrant was valid, and Supreme Court precedent is clear that the fact that a magistrate signed off on the warrant does not automatically absolve Walp of all responsibility. See, *Messerschmidt v. Millender,* 565 U.S. 535, 546-547, 132 S. Ct. 1235, 1245 (2012) ("The 'shield of immunity' otherwise conferred by the warrant, will be lost, for example, where the warrant was 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'") (citations omitted).

Supreme Court precedent suggests that in applying 42 U.S.C. § 1983 and considering causation issues Walp should be held "responsible for the natural consequences of his actions."

*Malley v. Briggs,* 475 U.S. 335, 344, 106 S. Ct. 1092, 1098 (1986).[3] Plaintiff respectfully submits that he should be entitled to argue to the jury that were it not for Walp obtaining the invalid search warrant, his arrest and prosecution would never have happened.

Additionally, there is evidence that Walp was not truthful in his search warrant affidavit. Walp explicitly swore in his affidavit that "I was not able to speak to Mr. Fehrle at the Memorial Medical Center due to him being sedated at the time I arrived at the hospital." (Doc. 46-4, Search Warrant, page 1). Contrary to that sworn statement, Walp testified at his 2023 deposition that he never went to the hospital to try and interview the plaintiff. (Deposition of Walp, 44:14-44:23, 45:6-45:9).

That specific sentence in Walp's search warrant affidavit is also evidence that he was fully aware on August 23, 2016 that Plaintiff had been sedated at the hospital. If Walp knew on August 23, 2016 that the Plaintiff had been sedated at the hospital why did he not take any steps to follow up on the obvious question: when was the Plaintiff sedated and did that occur before any blood draws? Critically, Walp testified at his deposition that he did not even consider the possibility that Plaintiff had been administered drugs immediately upon getting to the ER until a couple years after the accident. (Deposition of Walp, 58:1-58:9).

---

[3] "Petitioner has not pressed the argument that in a case like this the officer should not be liable because the judge's decision to issue the warrant breaks the causal chain between the application for the warrant and the improvident arrest. It should be clear, however, that the District Court's 'no causation' rationale in this case is inconsistent with our interpretation of § 1983. As we stated in *Monroe v. Pape,* 365 U.S. 167, 187 (1961), § 1983 'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.' Since the common law recognized the causal link between the submission of a complaint and an ensuing arrest, we read § 1983 as recognizing the same causal link." *Malley v. Briggs,* 475 U.S. 335, 344, 106 S. Ct. 1092, 1098 (1986).

The August 23, 2016 search warrant raises numerous questions and credibility issues that should be considered by a jury, and Plaintiff respectfully submits that Defendants' Motion should be denied.

**4. <u>Defendants' Argument that they are Shielded from All Liability Based on the Actions of the District Attorney's Office and Grand Jury are Unavailing</u>**

Distilled to its core, Defendants' primary argument is that they cannot be liable in this civil action because Walp was not the legal cause of Plaintiff's prosecution. They argue that the actions of the District Attorney's Office and Grand Jury effectively broke any chain of causation.

Plaintiff respectfully submits that the intervening acts defense should be rejected because there is sufficient evidence that the prosecution was initiated and continued based on false statements and evidence submitted by Walp. See generally, *Howard v. Gee,* 538 Fed. Appx. 884 (11th Cir. 2013) (Eleventh Circuit affirmed a District Court's denial of summary judgment, rejecting an intervening acts defense put forth by a sheriff's deputy); *Wright v. Watson,* 2015 U.S. Dist. LEXIS 106786, *20, 2015 WL 4873381 (M.D. Ga. 2015) ("Watson argues that he cannot be liable for malicious prosecution because the independent decisions of the prosecutors broke the chain of causation. But the 'intervening acts' rule Watson relies on does not break the chain of causation if plaintiff can show that these intervening acts were the result of deception or undue pressure by the defendant policemen. Here, Wright alleges that any actions taken by the prosecutor were based on false statements by Watson and other Defendants.") (quotation and citation omitted); *Turnbull v. Brown,* 2018 U.S. Dist. LEXIS 240101, *39, 2018 WL 11084952 (N.D. Ga. 2018) (District Court denied qualified immunity to a police officer in a malicious prosecution case, even though the Plaintiff had been indicted by a Grand Jury).

Many of the major issues in this case pertain to Plaintiff's medical records. Walp claims that in response to his search warrant for the Plaintiff's "complete medical records" the hospital produced 18 pages of records. Defendant admits that he never believed that the 18 pages of medical records he obtained from Memorial Hospital were the complete medical records. (Deposition of Walp, 203:1-203:4). Walp characterizes the 18 pages of medical records as an "abstract." (Deposition of Walp, 112:2-112:11; 133:5-133:8; 194:11-194:14). Walp admitted at his deposition that an "[a]bstract does not show anything what you are administered by them [i.e. the hospital] or what you would have been administered by EMS." (Deposition of Walp, 89:16-89:23).

Viewed in the light most favorable to the Plaintiff, a jury could find that Walp fabricated evidence and/or was untruthful in the following ways:

- Walp documented in his police reports that "I have obtained the medical records from when [Mr. Fehrle] was initially brought into the emergency room at Memorial Medical Center and the EMS report. Nowhere in either of these reports do they show that Mr. Fehrle was administered ANY midazolam or fentanyl." (Doc. 46-1, Police Reports, page 11). This evidence is false and highly deceptive. Walp's statement is arguably contradicted by several pieces of evidence, including (1) Walp's admission that he knew he hadn't obtained the complete medical records and he just had an 18 page "abstract," (2) Walp's admission that he knew that an abstract would not contain information about what medications had been administered at the hospital or by EMS, and (3) Walp's admission that he never actually read all 18 pages of the "abstract."

- Walp documented in his police report that when Plaintiff "was transported to the hospital they drew 'pre-admission' blood from him." (Doc. 46-1, Police Reports, page 11). This evidence is false and contradicted by the medical records.

- Walp testified at his deposition that he "probably" didn't learn Plaintiff had been denied bond until the present lawsuit was filed in 2022. This is contradicted by the August 17, 2017 email sent by the prosecutor Scott Robichaux ("Robichaux").

- Walp testified at his deposition that the seizure issue did not come up until sometime after the first indictment, i.e. sometime after July 5, 2017. This is

false and contradicted by Walp's own police report from November 6, 2016 and an email that Robichaux sent on July 4, 2017.

- Walp testified at his deposition about the supposed existence of audio recording(s) of a 2019 conversation between a prosecutor and Plaintiff's doctor, wherein the doctor allegedly supported the proposition that Plaintiff had taken himself off of medications against medical advice. There is no evidence that any such recording(s) ever existed. The District Attorney's office was issued a subpoena for its entire file and there were no recordings, reports, notes, or other evidence corroborating that this alleged 2019 conversation ever took place. Walp's allegation that such a conversation ever occurred is also contradicted by Dr. Schere's declaration. (Doc. 37, Declaration of Dr. Schere).

Viewed in the light most favorable to the Plaintiff, a jury could also find that Walp ignored exculpatory evidence and conducted a constitutionally deficient investigation in the following ways:

- Within 12 hours of the subject accident Walp was aware that Plaintiff was in the ICU and had life threatening injuries. Despite having that information, Walp did not even consider the possibility that Plaintiff had been administered drugs prior to any blood draws.

- Based on his August 23, 2016 search warrant, Walp was aware that Plaintiff was sedated at the hospital very early on in his investigation. Despite having that information, Walp did not even try to determine when the sedation occurred and whether that was before any blood draws.

- Walp testified that he that never read page 18 of the "abstract" which states "rapid sequence intubation was performed in the trauma bay prior to going to the CAT scan." If he had done so and conducted a Google search as to what rapid sequence intubation (or asked a medical professional or a more knowledgeable officer), he would have known that Plaintiff had been administered painkillers and sedatives immediately upon arriving at the hospital.

- Some of the other important information documented in the "abstract" is as follows: (1) "patient was paralyzed" (Doc. 46-8, page 5), (2) "O2 Device Ventilator" (Doc. 46-8, page 7), (3) patient had a blood transfusion at approximately 4:33 p.m. on August 21, 2016 (Doc. 46-8, page 7-8), (4) "RSI was performed in trauma bay. A trauma line was placed in the R groin" (Doc. 46-8, page 17), (5) "Due to ongoing hypotension and decreased mental status rapid sequence intubation was performed in the trauma bay prior to going to the CAT scan" (Doc. 46-8, page 18), and (6) "Aggressive resuscitation with blood

products was performed in the CT scanner due to ongoing tachycardia and hypotension that improved shortly thereafter." (Doc. 46-8, page 18). **There is no evidence that Walp documented this exculpatory evidence in his reports. There is no evidence that Walp ever brought this exculpatory evidence to the attention of the prosecutors. There is no evidence that Walp ever tried to follow up on this exculpatory evidence.**

- Walp documented in his police report from November 7, 2016 that "the parents of Ms. Bailey they told me about a letter Mr. Fehrle sent them stating he was in the middle of having a seizure during the wreck involving their daughter." (Doc. 46-1, Police Reports, page 11). Plaintiff's first indictment did not occur until July 5, 2017. Walp had approximately 7-8 months to look into this exculpatory evidence and there is no evidence that he did so.

If a police officer ignores exculpatory evidence that can form the basis for a malicious prosecution claim under Eleventh Circuit precedent:

> We recognize, however, that a police officer 'is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.' *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 128 (2d Cir. 1997). Nevertheless, **an officer may not choose to ignore information that has been offered to him or her,** such as Kingsland's assertions that she was injured and that Officer De Armas ran the red light. **Nor may the officer conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts,** such as whether there was cannabis in the truck or whether witnesses were available to attest to who was at fault in the accident.

*Kingsland v. City of Miami,* 382. F.3d 1220, 1229 (11th Cir. 2004) (emphasis added).

Viewed in the light most favorable to the Plaintiff, Walp chose to ignore critical information, elected not to obtain easily discoverable facts, and conducted his investigation in a biased manner.

Plaintiff further notes that any assertion that Walp had "nothing to do with the decision to prosecute" is contradicted in numerous respects, including the Defendant's own testimony:

> **Q. [questioning by defense counsel] Okay. So that was the first time you learned, and it's because the DA's office told you that Mr. Fehrle had been administered fentanyl prior to the blood being taken by Memorial?**
> A. That was the opinion. They wanted me to double check.
> **Q. Okay. And you looked at the records yourself?**

A. Yes.

**Q. Okay. And you confirmed that?**

A. Yes.

(Deposition of Walp, 199:13-199:23).

**Q. [questioning by defense counsel] Okay. After that meeting with the DA where you guys found out, hey, he got administered fentanyl prior to his blood being taken, is it correct to say that it was then the district attorney's decision to sort of pivot to the argument involving Mr. Fehrle's seizures?**

A. Yes. With a caveat. He also had me look -- I didn't just leave after the DUI stuff. He had me look at what he thought was the -- what he saw; again, confirming or denying.

(Deposition of Walp, 200:3-200:12).

Viewing the evidence in the light most favorable to the Plaintiff, it is respectfully submitted that the District Attorney's Office went to Walp to "double check" and to "confirm or deny" whether and how they should proceed, after it was proven that the DUI charge was unjustified.[4] The unique facts of this case seriously undermine the essential logic of the intervening acts defense. On this subject, the Eleventh Circuit reasoned in 1989 that "[o]nce someone is arrested and then substantial evidence of the suspect's guilt comes to light, the police can do little or nothing to stop further proceedings. Holding the police responsible for damage due to these later proceedings makes little sense. Prosecuting, indicting, finding ultimate guilt, and sentencing criminal defendants are not the business of the police." *Barts v. Joyner,* 865 F.2d 1187, 1196 (11th Cir. 1989). While that may be how the criminal justice system typically works, it is not the reality of how things occurred in Fehrle's case.

---

[4] It should have been foreseeable in 2018 that Walp would likely be sued for 42 U.S.C. § 1983 claims based on the initial indictment. Plaintiff respectfully submits that logical jurors could question to what degree Walp was acting in his own self-interest when he offered opinions to the District Attorney's Office about continuing the prosecution. Only the jurors can truly evaluate Walp's credibility.

Based on all of the above and the record before this Court, Defendants' argument that the intervening acts of the District Attorney's Office and Grand Jury broke the chain of causation should be rejected.

### 5. Robichaux's Affidavit Does Not Insulate the Defendants From Liability

Robichaux's affidavit (Doc. 46-9) does not materially alter the calculus of whether the Defendants are entitled to summary judgment. Plaintiff shows that some of the questions of material fact left unanswered by the affidavit are (1) how and to what degree the prosecutor relied on false information provided by Walp, (2) whether Walp transmitted his entire investigative file to the District Attorney's Office, (3) whether the prosecutor reviewed the complete case file before bringing the first indictment, (4) whether Walp asserted any influence or pressure on the prosecutor (the terms "undue" and "improper" are vague terms open to widely different interpretations), (5) how and to what degree either Grand Jury relied on false information provided by Walp, and (6) whether Walp exercised undue influence or improper pressure related to the second indictment.

These questions are not idle speculation. This can be shown by some of the available email evidence. At 8:32 p.m. on July 4, 2017 (the night before the first Grand Jury), Robichaux sent an email to Walp asking, "[d]o you know the full name of the Hit & Run victim? I've looked, and can only find her last name – Edwards." (Robichaux Email, sent at 8:32 p.m. on July 4, 2017). The name that the prosecutor was looking for, Iyesha Edwards, can be easily found on the first page of Walp's supplemental report. (Doc. 46-3, page 1). It is telling that the night before the Grand Jury the ADA was trying to find out the name of a victim in the case he was prosecuting. Viewing the evidence in the light most favorable to the Plaintiff and drawing reasonable inferences therefrom, the 8:32 p.m. email is evidence that (1) Walp did not send his entire investigative file to the District

Attorney's Office, and/or (2) the prosecutor did not have sufficient time to review the entire file prior to charging the case.

At 9:03 p.m. on July 4, 2017 Robichaux emailed Walp and in relevant part, stated "Cpl. Walp, Attached is the indictment. Let me know if any changes or questions." Viewing the evidence in the light most favorable to the Plaintiff, the email is evidence that Walp had a significant role in bringing the initial indictment. The lead prosecutor emailed Walp the night before the first Grand Jury and asked if he had "any changes" to the indictment. Defendants have consistently tried to minimize Walp's role in the prosecution. Walp testified "I have no say in what is presented to the grand jury." (Deposition of Walp, 186:1-186:3). Respectfully, a jury should be permitted to evaluate the truthfulness of that statement based on the 9:03 p.m. email and other evidence in this case.

Viewed in the light most favorable to the Plaintiff, the 9:03 p.m email also contradicts Walp's sworn deposition testimony that the seizure issue did not come up until some after the first indictment. (Deposition of Walp, 116:14-117:9). This is critical because the evidence suggests that prior to any indictment Walp was aware that Plaintiff's accident may have been caused by a seizure, and he did no further investigation to follow up on that critical exculpatory evidence.

The fact that alternative explanations may exist pertaining to the issues identified above is essentially irrelevant at this stage of the proceedings. Only a jury can judge the credibility of the witnesses and make a decision as to whether the evidence more strongly supports one side or the other, as explained by Eleventh Circuit:

> Summary judgment is not a time for fact-finding; that task is reserved for trial. See, e.g., *Tolan v. Cotton,* 572 U.S. 650, 655-57, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014). Rather, on summary judgment, the district court must accept as fact all allegations the non-moving party makes, provided they are sufficiently supported by evidence of record. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, at 251, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (June 25, 1986). So when competing narratives

emerge on key events, courts are not at liberty to pick which side they think is more credible. See *Feliciano v. City of Miami Beach,* 707 F.3d 1244, 1247 (11th Cir. 2013). Indeed, if "the only issue is one of credibility," the issue is factual, and a court cannot grant summary judgment. *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742-43 (11th Cir. 1996).

We must also bear in mind that, in identifying the relevant facts to resolve a motion for summary judgment, a district court must "view all evidence and make all reasonable inferences in favor of" the non-moving party. *Allen v. Bd. of Pub. Educ. for Bibb Cty.,* 495 F.3d 1306, 1315 (11th Cir. 2007) (citations and quotation marks omitted). And if a reasonable jury could make more than one inference from the facts, and one of those permissible inferences creates a genuine issue of material fact, a court cannot grant summary judgment. *Id*. Rather, the court must hold a trial to get to the bottom of the matter.

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020).

## 6. <u>Plaintiff's 42 U.S.C. § 1983 Malicious Prosecution Claim Against Walp is Viable and Should be Allowed to Proceed to Trial</u>

Viewed in the light most favorable to plaintiff, the evidence shows that Plaintiff was 100% innocent of any crimes set forth in both the first and second indictment. The accident occurred because Plaintiff suffered a serious medical emergency, i.e. a seizure, while driving. The prosecution was completely unwarranted and unsupported by actual or arguable probable cause.

The Eleventh Circuit has explicitly recognized the viability of 42 U.S.C. § 1983 malicious prosecution claims. *See, Blue v. Lopez,* 901 F.3d 1352, 1357 (11th Cir. 2018); *Kingsland v. City of Miami,* 382 F.3d 1220, 1234 (11th Cir. 2004); *Wood v. Kesler,* 323 F.3d 872, 880 (11th Cir. 2003). It should be undisputed that Plaintiff has met the favorable termination element of a malicious prosecution claim.[5]

---

[5] In 2022 the Supreme Court held that "[t]o demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark,* 142 S. Ct. 1332, 1335, 212 L. Ed. 2d 382, 387 (2022).

Regarding the issue of malice, Plaintiff respectfully submits that based on the record it would be inappropriate to grant Defendants' motion on the grounds that Plaintiff has failed to prove malice. Rather, "'[i]t is well settled that in an action to recover damages for malicious prosecution where, as here, the evidence is in dispute, the existence or non-existence of malice and want of probable cause are questions of fact for the jury.' Consequently, because Kingsland challenges the legitimacy of the relevant evidence, concerns regarding the fulfillment of the fourth and fifth elements for the common law tort of malicious prosecution are rightly reserved for the jury." *Kingsland, supra,* at 1235, quoting *Good Holding Co. v. Boswell,* 173 F.2d 382 F.3d 1220, 1233 (5th Cir. 1949).

Another factor weighing against granting Defendants' Motion for Summary Judgment is the important distinction between false arrest and malicious prosecution claims: "A false arrest claim requires a plaintiff to show that there was no probable cause to arrest him for 'any crime.' *Williams v. Aguirre,* 965 F.3d 1147, 1158 (11th Cir. 2020). A malicious prosecution claim requires a plaintiff to show that there was no probable cause for one or more of the charged offenses. *Id.*" *Doe v. Leach,* 829 Fed. Appx. 419, 422(1) (11th Cir. 2020). Under Eleventh Circuit precedent, so long as there was a lack of arguable probable cause for even just one of the offenses Plaintiff was charged with, Plaintiff has a viable 42 U.S.C. § 1983 malicious prosecution claim that should not be dismissed on summary judgment.

Furthermore, Plaintiff respectfully submits that based on the record Walp is not entitled to qualified immunity. "[F]alsifying facts to establish probable cause is patently unconstitutional and has been so long before Kingsland's arrest in 1995. *See, e.g., Riley v. City of Montgomery,* 104 F.3d 1247, 1253 (11th Cir. 1997) ('It was well established in 1989 that fabricating incriminating

evidence violated constitutional rights.'); *see also Hinchman v. Moore,* 312 F.3d 198, 205-06 (6th Cir. 2002) (citing *Hill v. McIntyre,* 884 F.2d 271, 275 (6th Cir. 1989)).” *Kingsland, supra,* at 1232.

> More than three decades before the officers accused Williams of attempted murder, the Supreme Court held that a search warrant was void when an officer's lie was necessary for the warrant to establish probable cause. *See Franks,* 438 U.S. at 156. By the time of Williams's detention, we had concluded that “the law [is] clearly established . . . that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen . . . if such false statements were necessary to the probable cause.” *Jones,* 174 F.3d at 1285. This prohibition applies when an arrest affidavit “is insufficient to establish probable cause” without an officer's false statement, *Kirk,* 781 F.2d at 1502; *see also Paez,* 915 F.3d at 1287, unless the seizure could have been supported as a warrantless arrest, *see Wilson,* 757 F.2d at 1239. And it extends to any officer “who provided information material to the probable cause determination.” *Kirk,* 781 F.2d at 1503 & n.5 (quoting *Leon,* 468 U.S. at 923 n.24); *see also Garmon,* 878 F.2d at 1408, 1410 (holding that a police officer who directed another agent to file an infirm warrant affidavit was liable for the ensuing unconstitutional seizure).

Williams v. Aguirre, 965 F.3d 1147, 1168-1169 (11th Cir. 2020).

> Because Walp violated clearly established law he is not entitled to qualified immunity.

### 7. Plaintiff's State Law Malicious Prosecution Claim Against Walp is Viable and Should be Allowed to Proceed to Trial

Plaintiff respectfully submits that the evidence in the record is sufficient to support a state law malicious prosecution claim:

> “A criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted shall give him a cause of action.” O.C.G.A. § 51-7-40. A plaintiff asserting malicious prosecution must show: “(1) prosecution for a criminal offense instigated by defendant; (2) issuance of a valid warrant, accusation, or summons; (3) termination of the prosecution in favor of plaintiff; (4) malice; (5) want of probable cause; and (6) damage to the plaintiff.” *Willis v. Brassell,* 220 Ga. App. 348, 350, 469 S.E.2d 733 (1996) (citations omitted).

*Lagroon v. Lawson,* 328 Ga. App. 614, 621, 759 S.E.2d 878, 884 (2014).

Viewed in the light most favorable to the Plaintiff, he can prove all of the elements of a malicious prosecution claim under Georgia law. The return of the two indictments by the Grand Jury against Mr. Fehrle can be considered prima facie evidence of probable cause, but the caselaw is clear that that can be rebutted in a malicious prosecution case.[6]

Walp is not entitled to official immunity in this case because the Plaintiff can show actual malice. Defendants admit that "[i]n a malicious prosecution case, actual malice can be shown by the presentation of evidence that the defendant was motivated by personal animus, or that the defendant manufactured evidence or knowingly presented perjured testimony. *Marshall,* 310 Ga. App. at 68." (Doc. 46-14, Defendants' MSJ Brief, page 22). With all due respect, the evidence in the record is sufficient to support a finding that Walp "manufactured evidence" and "knowingly presented perjured testimony." Defendants' confident assertion that "there is no evidence that Defendant Walp manufactured evidence or knowingly presented false facts to anyone involved in Plaintiff's prosecution" (Doc. 46-14, Defendants' MSJ Brief, page 23) is incorrect.

Based on the evidence before this Court, Plaintiff's state law malicious prosecution claim is viable and should not be barred by official immunity. See, *Lagroon v. Lawson,* 328 Ga. App. 614, 759 S.E.2d 878 (2014) (Georgia Court of Appeals held that three sheriff's deputies were not entitled to official immunity; "a jury reasonably could infer that Sheriff Lawson and Deputy

---

[6] "Lack of probable cause shall exist when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused. Lack of probable cause shall be a question for the jury, under the direction of the court." O.C.G.A. § 51-7-43. A judge, however, "may determine the issue when the material facts are undisputed." *Adams v. Carlisle,* 278 Ga. App. 777, 782 (1) (630 SE2d 529) (2006) (citations omitted). And while a grand jury's return of charges is prima facie evidence of probable cause, it is not conclusive and can be rebutted by direct or circumstantial evidence. *See Rowe v. CSX Transp.,* 219 Ga. App. 380, 381 (465 SE2d 476) (1995); *Auld v. Colonial Stores,* 76 Ga. App. 329, 336 (2) (45 SE2d 827) (1947)." *Lagroon v. Lawson,* 328 Ga. App. 614, 622 (2014).

Foskey arrested Lagroon and Barnett and took steps to secure grand jury charges against them despite knowing that they had not committed any offenses"; "there is evidence that for nine months Deputy Hancock concealed from the district attorney exculpatory evidence favoring Barnett and Lagroon").

**8.** **Plaintiff's 42 U.S.C. § 1983 *Monell* Claim Against Savannah is Viable and Should be Allowed to Proceed to Trial**

The facts in the record sufficiently support Plaintiff's *Monell* claim against Savannah. As stated in his Rule 26 Report, Eric Naugle ("Naugle") has offered his expert opinion that "Walp was either negligent in applying his training or incompetent to conduct this level of accident reconstruction"; "The SCMPD failed to properly supervise the actions of Corporal Walp, resulting in the unconstitutional arrest and prosecution of Mr. Fehrle"; and "Based upon my personal experience investigating other traffic accidents in the charge of the SCMPD I have found a lack of training, supervision, and overall investigative diligence whereby I have proven the innocence of aggrieved parties at the hands of the SCMPD." (Doc. Rule 26 Report, ¶¶ 48, 90, 92).

Naugle testified at his deposition he has "worked several cases that were conducted by the SCMPD where they failed to conduct thorough investigations. They didn't follow proper protocols and methodologies for the science of accident reconstruction…. [I]t shows a pattern of a lack of supervision by Savannah-Chatham Metropolitan Police Department of its traffic officers to ensure that they're applying their training -- number one, they're trained properly; and, number two, they're applying their training properly; number three, that there's effective oversight and supervision of these officers to make sure that they're doing the job right, because they're ruining peoples' lives." (Deposition of Naugle, 120:4-121:21).

It is notable that the Trevor Cannon ("Cannon") debacle was essentially unfolding contemporaneously with the early stages of Fehrle's case. Exculpatory evidence was turned over by MAIT on June 21, 2016 and Cannon's Amended Motion for New Trial claiming Brady violations was filed on June 29, 2016. (Doc. 50-2, Trevor Cannon Complaint, pages 29-30). On September 9, 2016, the prosecution had to file an affidavit admitting that 5 additional recorded interviews had been found and were now being produced for the first time. (Doc. 50-2, Trevor Cannon Complaint, pages 32). Chatham County Superior Court Judge Timothy R. Walmsley granted Defendant's Motion for New Trial on December 16, 2016, based largely on the Brady violations and ineffectiveness of trial counsel for failing to disclose Naugle's opinions in a timely manner.[7] (Doc. 50-2, Trevor Cannon Complaint, pages 28-47).

Based on all of the foregoing and the record before this Court, Plaintiff respectfully submits that he has a viable *Monell* claim based on Savannah's practice of inadequately training and supervising its officers and summary judgment should be denied.

### 9. <u>Plaintiff's Open Records Act Claim is Viable</u>

Plaintiff's Open Records Act claim is viable and Savannah's reliance on *Harrick v. Board of Regents of the Univ. Sys. of Ga.,* 2005 U.S. Dist. LEXIS 57597 (N.D. Ga. 2005) is misplaced. Plaintiff respectfully submits that the Georgia Court of Appeals specifically held in February 2022 that these types of claims are authorized by law. *Cardinale v. Keane,* 362 Ga. App. 644, 647, 869 S.E.2d 613, 617 (2022) ("We conclude that these provisions of the Open Records Act allow private

---

[7] Plaintiff notes that, as stated in Judge Walmsley Order of December 16, 2016, "Naugle also intended to testify to deficiencies in the police investigation. In broad summary, this testimony would have highlighted mistakes, or omissions, made by the Major Accident Investigation Team ('MAIT') investigators." (Doc. 50-2, Trevor Cannon Complaint, pages 43).

plaintiffs to seek civil penalties for violations of the Act."). Based on the record before this Court the Defendant is not entitled to summary judgment on this claim.

### 10. <u>The Primary Caselaw Relied on by Defendants is Clearly Distinguishable</u>

The Court is intimately familiar with *Clifton v. Jeff Davis Cty.,* 2019 U.S. Dist. LEXIS 94375 (S.D. Ga. 2019) wherein it granted summary judgment to several defendants in a 42 U.S.C. § 1983 case. Based on the Court's Order, the following non-exclusive list of facts strongly distinguish that 2019 case from Fehrle's civil action: "Here, Plaintiff does not cite to, and the Court is not aware of, any evidence indicating that Defendants were responsible for the decision to prosecute Plaintiff or the continuation of his prosecution."; "No Defendant testified at the grand jury proceedings."; "There is no evidence that any Defendant presented deceptive information to another Defendant, to the investigator, or—most importantly—to the D.A."; "Indeed, there is simply no evidence supporting Plaintiff's allegations that one or more of the Defendants ever met or spoke with the D.A. about this case after Powell's initial conversation with A.D.A. Kennedy." *Id*. Plaintiff respectfully submits that none of those things are true in this case.

Viewing the evidence in the light most favorable to the Plaintiff, there is evidence that (1) Walp was responsible for the Plaintiff's initial prosecution, (2) Walp was responsible for the Plaintiff's continuing prosecution, (3) Walp testified at both Grand Jury proceedings, (4) Walp was the only witness to testify at the Grand Jury proceedings, (5) Walp presented deceptive information to the District Attorney's Office, and (6) Walp had substantive communications with the District Attorney's Office during the prosecution. Under the circumstances, Plaintiff respectfully submits that *Clifton, supra,* is clearly distinguishable from the present case.

One of the other cases heavily relied on by the Defendants is *Eubanks v. Gerwen,* 40 F.3d 1157 (11th Cir. 1994). However, in that case the Eleventh Circuit stated that "[t]he evidence in the

record reveals that none of the defendants had anything to do with the decision whether or not to prosecute Eubanks. Thus the defendants herein are not proper targets of such a claim." *Eubanks v. Gerwen,* 40 F.3d 1157, 1160 (11th Cir. 1994) (citations omitted). Respectfully, any assertion that Walp had "nothing to do with the decision to prosecute" Plaintiff would be contradicted in numerous respects, including the Defendant's own testimony. (Deposition of Walp, 199:13-199:23; 200:3-200:12).

Viewing the evidence in the light most favorable to the Plaintiff, a prosecutor apparently went to Walp to "double check" and to "confirm or deny" whether he should proceed with the prosecution after it was proven that the DUI charge was unjustified.[8] The facts of this case present a unique situation which completely undermines the basic logic of applying the intervening acts defense. On this subject in 1989 that "[o]nce someone is arrested and then substantial evidence of the suspect's guilt comes to light, the police can do little or nothing to stop further proceedings. Holding the police responsible for damage due to these later proceedings makes little sense. Prosecuting, indicting, finding ultimate guilt, and sentencing criminal defendants are not the business of the police." *Barts v. Joyner,* 865 F.2d 1187, 1196 (11th Cir. 1989). While that may be how the criminal justice system typically works it is not how things occurred in Fehrle's case. Walp's own testimony on the available email records would support a finding that Walp had direct input in the decisions to indict Fehrle both times.

---

[8] Walp has essentially testified that he agreed with the decision to pursue the second indictment "as a certified accident reconstructionist." (Deposition of Walp, 157:6-157:19). Logical jurors could question whether he was just acting in his own self-interest when he apparently counseled a prosecutor to continue the case under an entirely different theory in 2018. Only a jury can properly evaluate Walp's credibility.

At an even more basic level, Walp was the only law enforcement officer to testify at the Grand Jury proceedings. Defendants have consistently objected on privilege grounds from providing any information about Walp's Grand Jury testimony, but logically the Grand Jury would only have indicted Plaintiff if Walp testified that the charges were warranted.

Plaintiff also shows that *Shaw v. Peach County,* 2022 U.S. Dist. LEXIS 200807 (M.D. Ga. 2022) is distinguishable in many respects. For one, the Peach County deputy who was sued in that case did not even testify at either Grand Jury proceeding. Additionally, an outside agency (the GBI) conducted the criminal investigation that ultimately led to the Plaintiff's prosecution. Additionally, there does not appear to be any serious discussion in *Shaw, supra,* about what intentional falsehoods the deputy allegedly told which could have led to the Plaintiff being charged. That is likely the most important distinguishing aspect, and Fehrle respectfully submits that based on the totality of the record and federal caselaw his Defendants' Motion should be denied. As explained by the Sixth Circuit:

> In law, "a man is responsible for the natural consequences of his acts." *Monroe v. Pape,* 365 U.S. 167, 187, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961) (Frankfurter, J., dissenting); *Jones v. City of Chicago,* 856 F.2d 985, 993 (7th Cir. 1988) (Posner, J.). Police officers are no exception to that rule: "[T]hey cannot escape liability by pointing to the decisions of prosecutors or grand jurors . . . to confine or prosecute [the plaintiff]. They cannot hide behind the officials whom they have defrauded." *Sykes,* 625 F.3d at 317 (citing *Jones,* 856 F.2d at 994). Indeed, when a police officer makes a false or misleading statement, he "may be liable for consequences caused by reasonably foreseeable intervening forces." *Id.* at 316 (citing *Higazy v. Templeton,* 505 F.3d 161, 177 (2nd Cir. 2007)). As *Sykes* implies, decisions of prosecutors are a natural kind of "reasonably foreseeable intervening force" even after an officer hands them the reins of an investigation. "[T]he chain of causation need not be considered broken . . . if [the officer] deceived the subsequent decision maker, or could reasonably foresee that his misconduct would contribute to an independent decision that results in a deprivation of liberty." *Id.* (quoting Higazy, 505 F.3d at 177) (alterations omitted).

> A grand jury indictment resulting from a police report does not change the calculus. "Police officers cannot, in good faith, rely on a judicial determination of probable cause [to absolve them of liability] when that determination was premised on an

officer's own material misrepresentations to the court." *Gregory,* 444 F.3d at 758. False or misleading statements have consequences, and the officers who make them must bear responsibility. The chain of causation is not broken by "a prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but proceed to trial—none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision." *Jones,* 856 F.2d at 985.

*Caskey v. Fenton,* 2022 U.S. App. LEXIS 31750, *19-20, 2022 FED App. 0460N (6th Cir. 2022).

## V.      CONCLUSION

Viewing the evidence in the light most favorable to the Plaintiff, it is respectfully submitted that reasonable jurors could find that Walp was the "but for" and proximate cause of Plaintiff's prosecution and resulting injuries. Walp should be held "responsible for the natural consequences of their actions." For all the foregoing reasons, and based on the record before this Court, Plaintiff respectfully submits that Defendants' Motion for Summary Judgment should be denied.

Respectfully submitted this 2nd day of August, 2023.

**THE ERICKSEN FIRM, LLC**

*/s/ Matthew A. Ericksen, Sr.*
**MATTHEW A. ERICKSEN, SR.**
Georgia Bar No.: 304088
*Attorney for Plaintiff*

708 Holcomb Bridge Road
Norcross, Georgia 30071
(404) 909-4354
matthew@ericksenfirm.com

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that I have this date served a true and accurate copy of the within and foregoing *PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT* by e-filing the document into the CM/ECF filing system which will automatically send e-mail notification of such filing to the following attorneys of record:

Bradley M. Harmon
Taylor L. Dove
**HUNTER, MACLEAN, EXLEY & DUNN, P.C.**
200 East Saint Julian Street
Post Office Box 9848
Savannah, Georgia 31412-0048

R. Bates Lovett
Jennifer N. Herman
**OFFICE OF THE CITY ATTORNEY**
P.O. Box 1027
Savannah, Georgia 31402

R. Jonathan Hart
Andre Pretorius
**CHATHAM COUNTY ATTORNEY'S OFFICE**
P.O. Box 8161
Savannah, Georgia 31412

This 2nd day of August, 2023.

**THE ERICKSEN FIRM, LLC**

*/s/ Matthew A. Ericksen, Sr.*
**MATTHEW A. ERICKSEN, SR.**
Georgia Bar No.: 304088
*Attorney for Plaintiff*

708 Holcomb Bridge Road
Norcross, Georgia 30071
(404) 909-4354
matthew@ericksenfirm.com