UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| BRADLEY FEHRLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV422-232 |
| | ) | |
| THE MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH and ROBIE WALP, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Defendants The Mayor and Aldermen of the City of Savannah ("the City") and Robie Walp (together, "Defendants") have moved to exclude Plaintiff Bradley Fehrle's expert witness Eric Francis Naugle. Doc. 47. Plaintiff has responded, doc. 50, and Defendants have replied, doc. 57. The motion is ripe for disposition.

## Background

The Court previously summarized Plaintiff's allegations as follows:

On August 21, 2016, Plaintiff was driving with his friend, Shannon Bailey, in the passenger seat down East Anderson Street in Savannah, Georgia. ([Doc. 4] at p. 5.) Plaintiff was not under the influence of any drugs or alcohol. (*Id.* at p. 10.) While driving, Plaintiff had a seizure and lost control of his

vehicle, leaving him incapacitated as the car accelerated. (*Id.* at p. 6.) The car then flipped multiple times, resulting in catastrophic damage to the vehicle, Bailey's death, and severe, life-threatening injuries to Plaintiff. (*Id.* at pp. 6-7.) Plaintiff was completely unconscious when paramedics arrived on the scene and transported him to the hospital. (*Id.* at p. 7.) Upon arrival at the hospital, the medical staff intubated Plaintiff and administered a number of medications, including Fentanyl and Midazolam, in an effort to save his life. (*Id.*) As documented in the hospital records included with his Amended Complaint, Plaintiff was admitted to the hospital at 3:07 p.m., and these medications were administered to him at 3:42 p.m. (*Id.* at pp. 7-8, 10; *see id.* at p. 8 (excerpt of medical record).) Plaintiff was given several more doses of Fentanyl and Midazolam on the same day. (*Id.* at p. 8.) Plaintiff ultimately survived and was discharged from the hospital nine days after the accident. (*Id.* at p. 9.)

Plaintiff has no family history of epilepsy. (*Id.* at p. 16.) Prior to August 21, 2016, he had suffered only one "possible" seizure. (*Id.*) Plaintiff had an MRI and an electroencephalogram in March and April of 2016, respectively, both of which yielded normal results. (*Id.*) Plaintiff had never been diagnosed with a seizure disorder before the date of the accident. (*Id.* at p. 17.) As of August 21, 2016, Plaintiff was in compliance with his doctor's instructions and recommendations, and no limitations had been set on his ability to drive. (*Id.*)

Officer Walp of the Savannah-Chatham Metropolitan Police Department was in charge of investigating Plaintiff's accident. (*Id.* at p. 9.) Within the course of his investigation, Walp obtained toxicology results from the Georgia Bureau of Investigation ("GBI") that confirmed Plaintiff was not under the influence of alcohol, marijuana, cocaine, or other illegal drugs, but indicated the presence of Fentanyl and Midazolam in Plaintiff's blood. (*Id.* at pp. 9-11.) The blood sample used for GBI's toxicology screening was taken after Plaintiff was administered Fentanyl and Midazolam in the hospital. (*See*

*id.* at p. 10.) On November 7, 2016, Walp prepared a report documenting the progress of the investigation in which he noted that the toxicology results indicated Plaintiff was driving under the influence of Fentanyl and Midazolam. (*Id.* at pp. 10-11.) He noted that he reached this conclusion because he had obtained and reviewed Plaintiff's hospital records and EMS report, and those records did not show Plaintiff was administered these drugs. (*Id.* at p. 11.)

As a result of Walp's investigation, on July 5, 2017, Plaintiff was indicted and charged with six crimes in Chatham County Superior Court: two counts of First Degree Vehicular Homicide (O.C.G.A. § 40-6-393); two counts of DUI Drugs (O.C.G.A. § 40-6-391); Reckless Driving (O.C.G.A. § 40-6-390); and Hit and Run (O.C.G.A. § 40-6-270). (Id. at p. 12.) A bench warrant was issued, and Plaintiff was arrested on July 25, 2017, and thereafter booked at the Chatham County Detention Center. (*Id.*) According to the Amended Complaint, at the bond hearing, false evidence was presented depicting Plaintiff to be a "drug addict, thief, and a danger to the community." (*Id.* at p. 13.) As a result, Plaintiff was denied bail and remained incarcerated. (*Id.*) Despite pressure to take a plea deal, Plaintiff continually refused to plead guilty to the crimes with which he was charged. (*Id.* at pp. 13-14.)

Plaintiff remained in jail until January 29, 2018, at which time he was bonded out after spending 188 days in the Chatham County Detention Center. (*Id.* at p. 14.) Plaintiff's criminal defense attorney eventually prevailed in showing the prosecutors that Plaintiff was not under the influence at the time of the accident and instead suffered a seizure while driving. (*Id.* at pp.14-15.)

Thereafter, "rather than abandon the criminal case against [Plaintiff]," Officer Walp and the Office of the Chatham County District Attorney (the "DA"), sought a new indictment based on a new theory that Plaintiff was "driving a motor vehicle with a known seizure disorder without having taken

3

> his prescribed medication." (*Id*. at p. 15.) On August 1, 2018, Plaintiff was indicted a second time and charged with two counts of First Degree Vehicular Homicide (O.C.G.A. § 40-6-393); two counts of Reckless Driving (O.C.G.A. § 40-6-390); and Hit and Run (O.C.G.A. § 40-6-270). (*Id*.) Plaintiff's prosecution continued until April 18, 2022, when the State of Georgia ultimately moved to dismiss the case due to insufficient evidence. (*Id*. at p. 18.)

Doc. 49 at 2-4 (headings omitted).

Plaintiff's Amended Complaint asserted false arrest claims against Walp under 42 U.S.C. § 1983 and against Walp and the City under O.C.G.A. § 51-7-1; malicious prosecution claims against Walp under 42 U.S.C. § 1983 and against Walp and the City under O.C.G.A. § 51-7-402; *Monell* claims against the City and Chatham County, both pursuant to 42 U.S.C § 1983; an intentional infliction of emotional distress claim against Walp and the city; a negligent retention and training claim against the City; and claims against the City and Chatham County for violations of the Georgia Open Records Act. Doc. 4 at 23-37. The Court granted, in part, and denied, in part, the City and Walp's Motion to Dismiss, dismissing Plaintiff's false arrest claims. Doc. 49 at 26. Plaintiff and Chatham County reached a settlement and Chatham County was

4

dismissed. Doc. 61. Plaintiff's other claims against the City and Walp remain pending.[1]

Plaintiff identified Eric Francis Naugle as an expert witness and contends he is qualified to offer expert opinions "in the areas of accident reconstruction and police practices." Doc. 50 at 2. Naugle's "Preliminary Expert Report" reveals he has a background in law enforcement, including traffic accident investigation and accident reconstruction and police training. *See* doc. 47-2 at 1-3. It also discloses the materials he reviewed, *id.* at 3-4, and identifies certain facts on which he bases his opinions, *id.* at 4-8. Although there appear to be opinion statements interspersed in the factual statements, *id.*, or, as Defendants put it, "an advocacy-based narration of facts," doc. 47 at 5, the report then specifically identifies Naugle's "opinions" as listed from paragraph 80 through paragraph 107. Doc. 47-2 at 8-9. Defendants move to exclude Naugle's opinions under Federal Rule of Evidence 702. *See* doc. 47 at 5-10.

---

[1] Defendants' Motion for Summary Judgment on all remaining claims is pending before the District Judge. *See* doc. 46.

## Federal Rule of Evidence 702

Federal Rule of Evidence 702 compels the Court to act as a "gatekeeper" for expert evidence. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 n. 7, 597 (1993)). In performing this task, the Court must consider whether the party offering the evidence has shown:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). The proponent of the expert opinion bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999) (citing *Daubert*, 509 U.S. at 592 n.10).

Under the first prong, "experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status."

*Frazier*, 387 F.3d at 1260–61; *see also* Fed. R. Evid. 702 (a witness may be qualified as an expert by "knowledge, skill, experience, training, or education[.]"). But, "[w]hen an expert witness relies mainly on experience to show he is qualified to testify, 'the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 942-43 (11th Cir. 2015.) (quoting *Frazier*, 387 F.3d at 1261).

As to the second prong, the reliability "criterion remains a discrete, independent, and important requirement for admissibility." *Frazier*, 387 F.3d at 1261. "The Supreme Court in *Daubert* set out a list of 'general observations' for determining whether expert testimony is sufficiently reliable to be admitted under Rule 702." *United States v. Brown*, 415 F.3d 1257, 1267 (11th Cir. 2005) (citation omitted). These factors, or observations, inquire into the expert's "theory or technique" and are: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field." *Id.* (citation omitted).

"Sometimes the specific *Daubert* factors will aid in determining reliability; sometimes other questions may be more useful." *Frazier*, 387 F.3d at 1262. "Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, '[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Id.* at 1261.

Lastly, expert testimony must assist the trier of fact. *Frazier*, 387 F.3d at 1262. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Id.* (citation omitted). This inquiry is commonly called the "helpfulness" inquiry. *Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021) (citing *Frazier*, 387 F.3d at 1260). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (quoting *Daubert*, 509 U.S. at 591). Additionally, experts "may not testify to the legal implications of conduct" or "tell the jury what result to reach." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). Such testimony is considered unhelpful because it "in no way

8

assists the trier of fact." *Cooper v. Pacific Life Ins. Co.*, 2007 WL 430730, at *1 (S.D. Ga. Feb. 6, 2007).

### Naugle's Opinions

Defendants argue that all of Naugle's opinions should be excluded as "improper speculation regarding subjective intent (*i.e.*, malice), baseless conjecture, inappropriate credibility determinations and inadmissible legal conclusions that will not assist the trier of fact." Doc. 47 at 5. Citing to the "length and confusing nature of Naugle's report," Defendants group his opinions into four general categories to argue for their exclusion. Doc. 47 at 5-10. Plaintiff responds directly to those arguments, *see* doc. 50 at 6-22, and then argues generally that Naugle should be permitted to testify, while conceding that "it would likely be proper to limit some of the language that Naugle should be permitted to use at trial . . .," *id.* at 24. For the reasons explained below, some of Naugle's opinions are appropriately excluded, and some are not. Subject to the District Judge's trial management procedures, he will, therefore, be permitted to testify at trial. He will not, however, be permitted to offer the full panoply of opinions contained in his report.

Defendants first challenge Naugle's "medical opinions" related to whether the accident was caused by Plaintiff having a seizure. Doc. 47 at 6. In his report, Naugle opines that:

> 80. Mr. Fehrle had a seizure which resulted in his body locking up with his foot on the accelerator pedal.
>
> 81. Having a seizure while driving resulted in Mr. Fehrle having no control over his vehicle, nor the ability to stop.
>
> 82. Corporal Walp failed to analyze all the evidence which reveals Mr. Fehrle more likely than not had a seizure while driving.
>
> . . .
>
> 103. Mr. Fehrle was given seizure medicine while in the hospital after the August 21, 2016 accident.
>
> 104. It is my opinion this crash was the direct result of Mr. Fehrle having a seizure, something he had no control over.

Doc. 47-2 at 8-9; *see also* doc. 47 at 6 (identifying ¶¶ 80, 81, 82, 103 & 104 as improper medical opinions). Defendants argue Naugle, who is not a medical expert, is unqualified to offer any opinion diagnosing Fehrle with a seizure. They also argue he has identified no other medical expert's opinion he relied on to formulate his opinions.

Plaintiff's response concedes that "Naugle is not an MD and at no time has he purported to make a medical diagnosis." Doc. 50 at 6. However, Plaintiff argues Naugle is entitled to inform the jury "how the

accident happened," and argues "there is substantial evidence in the record to support a finding that the August 21, 2016 accident was caused by the Plaintiff having a seizure." *Id.* Setting aside whether the evidence *could* show that Plaintiff suffered a seizure, Plaintiff has failed to show that *Naugle* is qualified to opine that he did. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005) ("The party offering the expert has the burden of satisfying [qualification] by a preponderance of the evidence."). Naugle concedes he is not a medical doctor, doc. 50 at 6, and his deposition testimony demonstrates he is unaware of any physician who has confirmed Fehrle suffered from a seizure or any medical tests showing seizure activity, doc. 47-1 at 26. Naugle's education and experience is not in a medical field, and he has no demonstrated experience diagnosing seizures or treating the physical impact of seizures in patients. Doc. 47-2 at 1-3. Naugle does not have "experience with the issue before the court," *Jones v. Novartis Pharm. Corp.*, 235 F. Supp. 3d 1244, 1251 (N.D. Ala. 2017). Any testimony from Naugle about whether Fehrle suffered from a seizure, the impact of any such medical emergency on Fehrle's ability to operate his vehicle, or whether Fehrle had any control over any seizure is, therefore, **EXCLUDED**. This includes the

opinions contained in paragraphs 80, 81, 82, 103, & 104 of Naugle's report.

Defendants next argue that Naugle's "legal conclusions on the existence of constitutional violations, probable cause, malicious intent, and negligence" should be excluded. Doc. 47 at 7. Specifically, they highlight the following as problematic legal conclusions:

> 43. Corporal Walp failed to conduct a thorough investigation into what if any drugs would have been administered to Mr. Fehrle during this process, what time this occurred, and how that compared with the time of the blood draws by the hospital.
>
> . . .
>
> 45. According to Corporal Walp, Mr. Fehrle's medical records did not show he was administered Midazolam nor Fentanyl. This has been proven to be false. Corporal Walp's negligence resulted in the DUI charge.
>
> . . .
>
> 48. According to Corporal Walp's training records, he was provided with instruction to conduct a spin analysis. Corporal Walp was either negligent in applying his training or incompetent to conduct this level of accident reconstruction.
>
> . . .
>
> 57. Corporal Walp based his charge of Reckless Driving on improper use of scientifically sound formulae, and his negligent application of those formulae.
>
> 58. Corporal Walp used data which was negligently obtained regarding the speed of Mr. Fehrle's vehicle to go forward with

this charge. Additionally, Corporal Walp provided no further basis for Reckless Driving other than speed. It is well known that in the State of Georgia, Reckless Driving cannot be charged by speed alone. There must be some other aggravating factor(s). Corporal Walp made no reference to that effect.

. . .

60. Corporal Walp then helped continue the prosecution with a second indictment against Mr. Fehrle for Reckless Driving and other offenses, alleging that Mr. Fehrle had a "known seizure disorder" and was reckless in operating a motor vehicle because he was "not taking his prescribed medicine".

. . .

84. According to Corporal Walp, Mr. Fehrle's medical records did not show he was administered Midazolam nor Fentanyl. This has been proven to be false. Corporal Walp's negligence resulted in the DUI charge.

. . .

86. The second indictment of "Hit and Run" is malicious on its face as there was no legal basis for this charge at that time.

87. No objectively reasonable and competent police officer could have looked at the facts in this case and concluded the charges were warranted against Mr. Fehrle.

. . .

90. The SCMPD failed to properly supervise the actions of Corporal Walp, resulting in the unconstitutional arrest and prosecution of Mr. Fehrle.

. . .

92. Based upon my personal experience investigating other traffic accidents in the charge of the SCMPD I have found a

> lack of training, supervision, and overall investigative diligence whereby I have proven the innocence of aggrieved parties at the hands of the SCMPD.
>
> . . .
>
> 105. It is my opinion that Corporal Walp failed to properly apply his training in this case, failed to be diligent in his investigation, and the SCMPD failed to properly supervise and monitor Officer Walp's investigation resulting in the unlawful and unconstitutional arrest, prosecution, and incarceration of Mr. Fehrle.
>
> 106. Corporal Walp's "investigation" in this case was constitutionally deficient.
>
> 107. It is my opinion, based upon my knowledge, training and experience, that Corporal Walp acted with malice toward Mr. Fehrle.

Doc. 47 at 7 (citing doc. 47-2 at 5-9). Plaintiff argues that the request to exclude all of the above opinions is overly broad. Doc. 50 at 8.

Defendants are correct that Naugle may not offer any legal conclusions. *See Montgomery*, 898 F.2d at 1541. But "[t]he line between proper expert testimony (facts, inferences to draw therefrom, and the expert's opinion) and improper expert testimony (the actual requirements of the law) is often difficult to draw." *Cooper*, 2007 WL 430730, at *1; *see also Hanson v. Waller*, 888 F.2d 806, 811 (11th Cir. 1989) ("[T]he distinction between whether challenged testimony is either an admissible factual opinion or an inadmissible legal conclusion is not

always easy to perceive."). In some instances, though, the line is easier to identify. Most of the identified opinions contain improper legal conclusions because Naugle describes Walp's behavior using "terminology with legal import, such as negligence." *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1325 (M.D. Fla. 2015) (collecting cases). He also describes Walp's actions as "malicious" or "unconstitutional." *See* doc. 47-2 at 5-9. Even Plaintiff "freely concedes that it would be proper to limit some of the language Naugle should be permitted to use at trial." Doc. 50 at 14. In *Tillman*, the Middle District of Florida relied on guidance from the Sixth Circuit that "[t]he best resolution of this type of problem is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate." 96 F. Supp. at 1325 (quoting *Torres v. Cnty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985)). The Court will do so here, too. Therefore, any opinions assigning legally significant terms like "negligent," "malicious," or "unconstitutional," to Walp's actions in this case are **EXCLUDED**.

Of the challenged opinions, paragraphs 45, 48, 57, 84, 86, 90, 106, and 107 are excluded. Doc. 47 at 7; doc. 47-2 at 5-9. Although the entirety

of paragraph 58 is not subject to exclusion, the portion stating that "Corporal Walp used data which was negligently obtained" is **EXCLUDED**. Doc. 47-2 at 6. Additionally, the portion of paragraph 105 stating that Plaintiff's "arrest, prosecution, and incarceration" was "unlawful and unconstitutional" is **EXCLUDED**. *Id.* at 9. The remainder of paragraph 105 is not subject to exclusion on these grounds. The challenged opinions contained in paragraphs 43, 60, 87, and 92 are not subject to exclusion on this ground. Defendants also criticize Naugle's lack of support for these opinions, *see* doc. 47 at 7, but that is fodder for cross examination and not grounds for exclusion. *See, e.g.*, *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345-46 (11th Cir. 2003) (affirming district court's decision to permit expert to testify where opinion was based on flawed or inadequate evidence).

Next, Defendants argue Naugle's opinions regarding law enforcement practices are inadmissible because the "generalized statements regarding law enforcement practices [are] connected to this case only by *ipse dixit*." Doc. 47 at 7. They contend Naugle fails to identify "what, if any, policing standards Walp departed from during his

16

investigation of the Incident," and instead of "analyzing or comparing Walp's actions with policies or professional standards, Naugle makes conclusory statements and gives opinions based on his personal view of the evidence with no explanation of how the facts relate to his specialized knowledge or experience." *Id.* at 7-8.

Naugle has been "actively employed in police practices and law enforcement since 1988," doc. 47-2 at 1, and bases his opinions upon that specialized experience, *id.* at 4. "There is nothing inherently unreliable about this methodology." *Bussey-Morice v. Kennedy*, 2012 WL 7992419, at *3 (M.D. Fla. Dec. 28, 2012) (declining to exclude a police practices expert on reliability grounds when the expert "use[d] his experience in police practices and procedure [. . .] and evaluate[d] the facts in this case to form his opinions."). Plaintiff has sufficiently explained how Naugle's experience leads to the conclusions reached, that the experience is a sufficient basis for the opinions, and how that experience was reliably applied to the facts of this case. *Frazier*, 387 F.3d at 1261. Any perceived

flaws in Naugle's methodology may be addressed on cross-examination. *Quiet Technology DC-8, Inc.*, 326 F.3d at 1345.

Finally, Defendants challenge Naugle's testimony about "what the deceased passenger, Shannon Bailey, did during the accident." Doc. 47 at 9-10. They argue it is "wildly speculative." *Id.* at 10. Naulge opines that "[t]he movements between the vehicles and the clockwise rotation are consistent with the front seat passenger grabbing the wheel and attempting to control the vehicle." Doc. 47-2 at 9, ¶ 101. He based this opinion on his own drag testing, his review of witness statements about the accident, and the dynamics of the vehicle. *Id.*, ¶¶ 93-101. Defendants do not challenge his methodology, but simply point out that the passenger is "the only one who could know what happened that day." Doc. 47 at 10. While likely true, the expert, whose qualifications as an accident reconstructionist have not been challenged, is entitled to review the evidence, apply his experience and methodology, and offer his opinion about what happened. Defendants remain free to challenge his opinion on cross examination.

## Conclusion

For the foregoing reasons, Defendant's Motion to Exclude is **GRANTED**, in part, and **DENIED**, in part. Doc. 47. Any testimony from Naugle about whether Fehrle suffered from a seizure, the impact of any such medical emergency on Fehrle's ability to operate his vehicle, or whether Fehrle had any control over any seizure is **EXCLUDED**. Additionally, any opinions assigning legally significant terms like "negligent," "malicious," or "unconstitutional," to Walp's actions in this case are **EXCLUDED**. The remainder of Naugle's opinions are not subject to exclusion based on the grounds raised by Defendants' motion.

**SO ORDERED** this 26th day of January, 2024.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA