**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| BRADLEY FEHRLE, | |
| Plaintiff, | CIVIL ACTION NO.: 4:22-cv-232 |
| v. | |
| THE MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH, and ROBIE WALP, | |
| Defendants. | |

**O R D E R**

This action is before the Court on Defendants the Mayor and Aldermen of the City of Savannah ("the City") and Officer Robie Walp's Motion for Summary Judgment.  (Doc. 46.) Plaintiff Bradley Fehrle filed this lawsuit under 42 U.S.C. § 1983 ("Section 1983"), alleging he was unlawfully arrested, detained, and prosecuted following a motor vehicle accident that occurred when he unexpectedly experienced a seizure while driving.  (Doc. 4.)  Plaintiff brings claims of malicious prosecution, municipal liability, and various state-law claims.  (Id.) Defendants[1] filed the at-issue Motion for Summary Judgment arguing, among other things, that Plaintiff failed to state a claim for malicious prosecution, that Walp is entitled to official and qualified immunity, and that the City is not liable for Walp's actions.  (See generally doc. 46-14.) Plaintiff filed a Response, (doc. 52), and Defendants filed a Reply, (doc. 60).  For the reasons more fully explained below, the Court hereby **GRANTS in part and DENIES in part** the Motion.  (Doc. 46.)

---

[1]  Chatham County was originally named as a defendant to this action but was dismissed on August 24, 2023, leaving Walp and the City as the sole remaining defendants.  (Doc. 61.)  Accordingly, the Court uses the term Defendants to refer only to the City and Walp.

# BACKGROUND

## I.    The Accident and Walp's Investigation

On August 21, 2016, Plaintiff was driving his 2012 Volkswagen CC when he suddenly lost control of his vehicle and collided into the front of a house located at 1239 E. Anderson Street, Savannah, Georgia.   (Doc. 52-1, p. 1.)   The collision caused Plaintiff serious life-threatening injuries and killed the passenger in the vehicle with Plaintiff, Shannon Bailey.  (Id. at pp. 1–2.)  Plaintiff was then transferred to the emergency room at Memorial Health University Medical Center ("Memorial").  (Id. at p. 2.)

Defendant Walp responded to the scene as a member of the Major Accident Investigation Team ("MAIT") for the Savannah-Chatham Metropolitan Police Department ("SCMPD").  (Id.) Upon arrival, Walp conducted a walkthrough of the accident scene to locate road markings and look for evidence of what may have caused the collision.  (Id.)  Based on his preliminary findings on the scene, Walp concluded that Plaintiff lost control of the vehicle while traveling at a high rate of speed.  (Id.)  Walp also discovered that Plaintiff collided with another vehicle just before colliding into the house.  (Id. at p. 3; doc. 46-3.)

Walp memorialized his findings from his preliminary investigation in an incident report (the "Report").  (See doc. 46-1.)  In the Report, Walp stated that he went to Memorial, but Plaintiff was intubated in the intensive care unit.  (Id. at p. 4.)  Additionally, the Report stated that while at Memorial, he "placed a hold on [Plaintiff's] pre-admission blood work."  (Id.)  But the Blood Alcohol Request Form in the District Attorney's case file makes no mention of "pre-admission blood," and Memorial's records likewise do not reflect any evidence of "pre-admission blood work."  (See docs. 52-4, 52-5.)  As part of his investigation, Walp obtained a search warrant for "blood samples taken during [Plaintiff's] admission" and Plaintiff's complete

medical records at Memorial.  (Doc. 52-1 p. 4; doc. 46-4, p. 1.)  Walp executed the search warrant on January 24, 2016, and received three vials of Plaintiff's blood and eighteen pages of medical records from Memorial.  (Doc. 52-1, p. 5.)  Walp later testified that he knew that the eighteen pages of records he received was an "abstract" of Plaintiff's medical records, and that the abstract would not contain information about what medications would have been administered at Memorial or by EMS.  (Doc. 46-2, pp. 23, 28.)  Walp admitted he did not review the entire abstract.  (Id. at p. 34.)  Walp also requested and obtained a toxicology screening of Plaintiff's bloodwork from the Georgia Bureau of Investigation ("GBI").  (Id.; doc. 46-1, p. 10; doc. 46-7; doc. 46-4, p. 1.)  The toxicology screening showed a positive test for Fentanyl and Midazolam.  (Doc. 52-1, p. 6.)

Walp also obtained a search warrant for the airbag control module and powertrain control module in Plaintiff's vehicle and conducted an accident reconstruction.  (Id. at p. 5; see generally doc. 46-5, doc. 46-6.)  Based on the results of his reconstruction, Defendant Walp concluded that Plaintiff was travelling well above the speed limit at the time he lost control of the vehicle. (Doc. 52-1, p. 6.)

After concluding the investigation, Defendant Walp found that Plaintiff was criminally responsible for the collision and in violation of these laws: (1) DUI Less Safe (Drugs), O.C.G.A. § 40-6-391(a)(2); (2) Reckless Driving, O.C.G.A. § 40-6-390; (3) Vehicular Homicide (1st Degree), O.C.G.A. § 40-6-393(a); and (4) Hit and Run, O.C.G.A. § 40-6-270.  (Id. at p. 8.)

Walp then sent his investigation file to the Chatham County District Attorney's Office ("DA's Office") to review.  (Id. at p. 9.)  Assistant District Attorney Scott Robichaux reviewed the file and presented charges against Plaintiff for the above listed violations.  (Id. at p. 11.) Robichaux presented the charges on July 5, 2017, and the grand jury true billed all charges.  (Id.

at p. 12.)  Before presenting the case to the grand jury, Robichaux emailed Walp asking for information about the victim in the hit and run—her name and whether she sustained injuries. (Doc. 52-8, p. 1.)  This information was contained in a supplemental report created by Walp. (Doc. 46-3.)  Robichaux also asked Walp, the night before the grand jury indictment, if Walp had any changes to the proposed charges.  (Doc. 52-8, p. 2.)  Walp appeared as a witness for the State of Georgia at the grand jury proceeding.  (Doc. 52-1, 13.)  Following the indictment, a bench warrant was issued, and Plaintiff was arrested.  (Id.)  This was the first and only time Plaintiff was arrested in relation to the accident.  (Id.)

During the first prosecution, Plaintiff's attorney provided the DA's Office with medical records that neither Defendant Walp nor the DA's Office had seen before.  (Id.)  In August 2018, the DA's Office presented superseding charges to a grand jury based on a new theory that Plaintiff operated his vehicle "with a known seizure disorder and without having taken his prescribed medication."  (Id. at p. 14 (quoting doc. 14-2, p. 2.).)  The new charges were presented on August 1, 2018, and the grand jury again true billed all charges.  (Id. at p. 15.) Walp testified again at the second grand jury proceeding as a fact witness for the State of Georgia.  (Id.)  On August 17, 2017, Robihaux asked Walp for the "full case file" in Plaintiff's case.  (Doc. 52-8, p. 3.)  Walp testified that he continued to assist the DA's Office throughout Plaintiff's prosecution.  (Doc. 46-2, p. 50; see doc. 52-8.)

## II.    Procedural History

Plaintiff initially filed this lawsuit on October 4, 2022, (doc. 1), and filed his Amended Complaint on October 13, 2022, (doc. 4).  In the Amended Complaint, Plaintiff alleges nine counts against Walp, the City, and Chatham County for: (a) false arrest under 42 U.S.C. § 1983 (Count I) and O.C.G.A. § 51-7-1 (Count V); (b) malicious prosecution against Officer Walp

under 42 U.S.C. § 1983 (Count II) and O.C.G.A. § 51-7-40 (Count VI); (c) <u>Monell</u> liability against the City under 42 U.S.C § 1983 (Count III); <u>Monell</u> liability against Chatham County under 42 U.S.C § 1983 (Count IV); (d) intentional infliction of emotional distress (Count VII); (e) negligent retention and training against the City (Count VIII); and (f) violation of the Georgia Open Records Act against the City (Count IX).  (Doc. 4, pp. 23–37.)  Defendants then moved to dismiss various counts.  (<u>See generally</u> doc. 8.)  This Court dismissed Plaintiff's false arrest claims but denied the motion on all other grounds.  (<u>See</u> doc. 49.)  Defendants now move for Summary Judgment on all remaining claims.  (Doc. 46.)  Plaintiff filed a Response in opposition, (doc. 52), and Defendants filed a Reply, (doc. 60).

### STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'"  <u>FindWhat Inv'r Grp. v. FindWhat.com</u>, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Id.</u>

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  <u>See</u> <u>Williamson Oil Co. v. Philip Morris USA</u>, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  <u>Moton v. Cowart</u>, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at

trial, the moving party may discharge its burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove its case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (citation and emphasis omitted). Additionally, the Court is not permitted to make credibility determinations, weigh conflicting evidence to resolve disputed facts, or assess the quality of the evidence. Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008).

**DISCUSSION**

## I.    Federal Malicious Prosecution

Defendants first move for summary judgment on Plaintiff's federal malicious prosecution claim, arguing that he cannot show that Walp caused Plaintiff's prosecution or that Walp lacked probable cause.[2]  (Doc. 46-14, pp.10–14.)

To prevail on a malicious prosecution claim, a plaintiff must prove both "a violation of [his] Fourth Amendment right to be free of unreasonable seizures" and "the elements of the common law tort of malicious prosecution."  Paez v. Mulvey, 915 F.3d 1276, 1285 (11th Cir. 2019).  To make a prima facie case of malicious prosecution under the common law, a plaintiff must prove: (1) that the officer instituted or continued a criminal prosecution against him; (2) with malice and without probable cause; (3) that terminated in his favor; and (4) caused damage to him.  Williams v. Aguirre, 965 F.3d 1147, 1157 (11th Cir. 2020).   The United States Court of Appeals for the Eleventh Circuit has recognized that there is "significant overlap" between a plaintiff's burden to demonstrate a Fourth Amendment violation and the common-law elements of malicious prosecution.  Luke v. Gulley, 975 F.3d 1140, 1144 (11th Cir. 2020).  "If a plaintiff establishes that a defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process, he has also established that the defendant instituted criminal process against him with malice and without probable cause."  Id. (citing Aguirre, 965 F.3d at 1162–65). Accordingly, the Court will apply the Eleventh Circuit's "simplif[ied]" standard for malicious prosecution, which requires the plaintiff to prove two elements: "(1) that the defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process and (2) that the criminal proceedings against him terminated in his favor."  Id.  There is no dispute that the

---

[2] Defendants also moved for summary judgment on Plaintiff's original false arrest claims.  (Doc. 46-14, p. 9.)  As already stated, the Court already dismissed those claims.  (See doc. 49, pp. 6–7, 26.)

proceedings terminated in Plaintiff's favor.   (See doc. 46-14, pp. 8, 10.)   Thus, the Court considers whether Defendants violated Plaintiff's Fourth Amendment rights.

**A.      Plaintiff has Produced Sufficient Evidence that Walp Made Material Misstatements in His Report to Manufacture Probable Cause.**

A Fourth Amendment violation under a theory of malicious prosecution requires a seizure pursuant to legal process.  Aguirre, 965 F.3d at 1158.  To prevail on a claim of malicious prosecution, a plaintiff must show that "the judicial determination of probable cause underlying [the plaintiff's] seizure was invalid."  Id. at 1162.  A plaintiff can do this by showing, "for example, a judge's probable-cause determination is predicated solely on a police officer's false statements."  Manuel v. City of Joliet, 580 U.S. 357, 367 (2017).  When this happens, "[l]egal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement."   Aguirre, 965 F.3d at 1158.   A plaintiff can make this showing by establishing "either that the officer who applied for the warrant should have known that his application failed to establish probable cause," or that "an official, including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary" to support probable cause.  Id. at 1165.  Accordingly, once a claimant has established that an officer has made a false statement, the Court then must consider: (1) "whether there was an intentional or reckless misstatement or omission;" and (2) "whether probable cause would be negated if the offending statement was removed or the omitted information included."  Paez v. Mulvey, 915 F.3d 1276, 1287 (11th Cir. 2019).

Plaintiff argues that Walp made multiple intentional or reckless statements on which the DA's Office relied in bringing criminal charges.  Turning first to the Report, Plaintiff highlights that Walp claimed to have visited Memorial, could not interview Plaintiff, and, while at Memorial, put a hold on Plaintiff's "pre-admission" blood samples.  (Doc. 52, p. 10.)  Walp

further stated in the Report that GBI tested these "pre-admission" blood samples and detected the presence of midazolam and fentanyl.  (Doc. 46-1, pp. 10–12.)  He also reported that he obtained and reviewed Plaintiff's medical records from Memorial and confirmed that "[n]owhere . . . do [the records] show that [Plaintiff] was administered ANY midazolam or fentanyl."  (Doc. 46-1, p. 11.)  As Plaintiff points out, these statements conflict with the record evidence.  For example, there is no indication that the blood samples requested were "pre-admission" samples, and indeed, the search warrant does not request "pre-admission" samples.  (Doc. 46-4.)  Walp notes that he placed a "hold" on these blood samples while at Memorial on the day of the accident but later testified that he never went to Memorial that day.[3]  (Doc. 46-2, p. 12 ("Q. Did you ever go to the hospital to try to interview [Plaintiff]?  A. No.").)  While the Report suggests that Walp reviewed Plaintiff's entire medical records, he later testified that he knowingly obtained only an "abstract" which *he knew* did not contain information about the medications that Plaintiff would have been administered by EMS or while at Memorial.  (Id. at pp. 28, 23.)  Moreover, Walp testified that he did not, in fact, even review the abstract in full.  (Id. at p. 34.)

Though Walp knew he did not have a record of what medication Plaintiff was given, Walp stated that Plaintiff's medical record had no indication that he was administered fentanyl and midazolam.  And despite evidence that Walp did not go to Memorial, he reported that he went there to ensure the blood samples—the samples underlying Plaintiff's arrest and prosecution—were taken preadmission.  Taken together, a reasonable jury could conclude that Walp made intentional or reckless misstatements in the Report.  See Aguirre, 965 F.3d at 1166

---

[3]  Defendants attribute Walp's contradictory testimony to the lapse of time between the actions giving rise to this case and his deposition.  (Doc. 60, p. 8.)  It is for the jury to determine whether the contradictions are due to this reason or whether they are evidence of intentional misstatements.  At summary judgment, the Court must construe this dispute in Plaintiff's favor.

(inconsistent versions of events enough to support inference that officer lied in an arrest affidavit and sufficient to satisfy requirement that misstatements were intentionally or recklessly made).

Additionally, these contradictions are sufficient to create a genuine dispute of material fact as to whether "probable cause would be negated" if Walp's misstatements were corrected. Paez, 915 F.3d 1276, 1287.  If Walp had reviewed Plaintiff's complete medical records as he claimed and included the fact that Plaintiff *was* administered fentanyl and midazolam *after* admission to Memorial, those facts would have negated probable cause that he was under the influence of those drugs at the time of the accident.

**B.    A Genuine Dispute of Material Fact Exists as to Whether Walp Caused Plaintiff's Prosecution.**

Defendants maintain that even if Walp lied in the Report, he turned over his case file to the DA's Office for it to independently assess and that the DA's independent investigation cured any shortcomings in the Report.  (Doc. 46-14, pp. 13–14.)

Police officers are not the legal cause of a prosecution "where there was no evidence that they had anything to do with the decision to prosecute or that they had 'improperly influenced' that decision."  Williams v. Miami-Dade Police Dep't, 297 F. App'x 941, 947 (11th Cir. 2008) (citing Eubanks v. Gerwen, 40 F.3d 1157, 1160–61 (11th Cir.1994)).  "The intervening acts of the prosecutor, grand jury, judge and jury . . . each break the chain of causation unless plaintiff can show that these intervening acts were the result of deception or undue pressure by the defendant policemen."  Barts v. Joyner, 865 F.2d 1187, 1195 (11th Cir. 1989).  "However, legal cause is established where the malicious prosecution claim is based upon officer[']s fabricating false and misleading evidence that is eventually presented to a prosecutor, in turn, influencing the decision to prosecute the accused."  Baker v. City of Atlanta, 662 F. Supp. 3d 1308, 1325 (N.D. Ga. 2023).

The Court has already found that the jury could determine that Walp included false and misleading information in the Report.  Furthermore, Plaintiff has submitted evidence suggesting that the DA's Office did not receive a complete copy of all records reviewed by Walp in his investigation, and Walp continued to assist the DA's Office in the prosecution even after the first indictment.  (Doc. 52, pp. 14–15.)  Specifically, Plaintiff points to evidence that Robichaux asked Walp *the night before the first grand jury indictment* for more information about the victim in the accident, (doc. 52-8, p. 1), and asked for Walp's input on the charges to be brought, (id. at p. 2).  Robichaux later requested the "full case file" from Walp as he did not have digital copies of anything.  (Id. at p. 3.)  Moreover, Walp testified that he continued to play an active role throughout the prosecution, and even after Plaintiff's first indictment.  (Doc. 46-3, p. 50.)  Viewed in the light most favorable to Plaintiff, this evidence creates at least a question of fact as to whether Walp—and his untruthful statements—continued to influence Plaintiff's prosecution.

In sum, because Plaintiff has submitted evidence that the prosecutor received and relied on false and fabricated evidence from Walp, the Court cannot say that Walp was not the cause of Plaintiff's prosecution.  See Baker, 662 F. Supp. 3d at 1325 (causal chain not broken where officers presented false reports to prosecutors and "persisted in initiating, participating in, and assisting" with the prosecutions); cf. Clifton v. Jeff Davis Cnty., No. 2:16-cv-108, 2019 WL 2385191, at *7 (S.D. Ga. June 5, 2019) ("There is no evidence that [the officer] presented deceptive information . . . to the D.A. . . . or [that the officer] ever met or spoke with the D.A. about this case.").

**C.** **Sufficient Evidence Shows that Walp Violated Clearly Established Law by Making False Statements in the Investigation Report.**

Defendants also argue that even if Plaintiff has presented sufficient evidence to bring a malicious prosecution claim, Walp is nevertheless entitled to qualified immunity on the charge. (Doc. 46-14, pp. 20–21.)

Qualified immunity protects government officials performing discretionary functions[4] from suit in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Determining whether qualified immunity is appropriate is a two-step inquiry.  First, the Court must determine "whether the plaintiff's allegations, if true, establish a constitutional violation."  Hope v. Pelzer, 536 U.S. 730, 736 (2002).  If a plaintiff plausibly alleges a constitutional violation, the Court then must consider whether the right violated was "clearly established."  Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002); Saucier v. Katz, 533 U.S. 194, 201 (2001).  As the Court has already found that Plaintiff has submitted a triable claim of malicious prosecution in violation of the Fourth Amendment, it turns to whether that right was clearly established.

A constitutional right is clearly established "only if its contours are 'sufficiently clear that a reasonable official would understand what he is doing violates that right.'"  Vaughan v. Cox, 343 F.3d 1323, 1332 (11th Cir. 2003) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  To determine whether the officer violated a clearly established right, the Court must consider "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.

---

[4]  There is no dispute over whether Walp was acting within his discretionary authority.  (See generally doc. 52.)

Plaintiff argues that the law is clearly established that "fabricating incriminating evidence violate[s] constitutional rights." (Doc. 52, pp. 17–18 (quoting <u>Riley v. City of Montgomery</u>, 104 F.3d 1247, 1253 (11th Cir. 1997)).) The Court agrees. "The law [is] clearly established . . . that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen." <u>Jones</u>, 174 F.3d at 1285. It is likewise clearly established that this prohibition "extends to any officer who provided information material to the probable cause determination." <u>Aguirre</u>, 965 F.3d at 1169 (internal quotations omitted); <u>see also</u> <u>Garmon v. Lumpkin Cnty.</u>, 878 F.2d 1406, 1410 (a police officer who directed another agent to file an infirm warrant affidavit was liable for the ensuing unconstitutional seizure). In light of this "uncontroverted and well-established rule" prohibiting falsifying information to manufacture probable cause, <u>Aguirre</u>, 965 F.3d at 1169, Plaintiff has raised a genuine issue of material fact that Walp violated clearly established law when he made material misstatements in his Report leading to Plaintiff's subsequent indictment. <u>See</u> <u>Brown v. Gill</u>, 792 F. App'x. 716, 721 (11th Cir. 2019) ("no difficulty in concluding" that it is clearly established that "the Constitution prohibits an officer from making perjurious or recklessly false statements"); <u>see also</u> <u>Kelly v. Curtis</u>, 21 F.3d 1544, 1554 (11th Cir. 1994) ("[A] police officer violates the Constitution if, in order to obtain a warrant, she perjures herself or testifies in reckless disregard of the truth.").

In sum, Plaintiff has presented evidence sufficient to support his malicious prosecution claim by pointing to misstatements that Walp made in the Report and presented to prosecutors. Additionally, the law clearly prohibits the use of false statements to support probable cause. Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's federal malicious prosecution claim (Count I) is **DENIED**.

## II.    State Law Malicious Prosecution

Defendants argue that Walp is entitled to official immunity on Plaintiff's state law malicious prosecution claim (Count VI).[56]  Under Georgia law, municipal offers enjoy official immunity for certain claims brought against them in the performance of their official functions. Ga. Const., Art. I, § 2, ¶ IX; <u>Baker</u>, 662 F. Supp. 3d at 1326 ("Under Georgia's doctrine of official immunity, state public officials are not personally liable for discretionary acts performed within the scope of their official authority.").  However, public officials do not enjoy official immunity under Georgia law when "they act with actual malice or with actual intent to cause injury in the performance of their official functions."  Ga. Const. art. I, § 2, ¶ IX(d); <u>see</u> <u>Murphy v. Bajjani</u>, 647 S.E.2d 54, 60 (Ga. 2007) ("A public agent's acts do not have official immunity if they are discretionary acts committed with actual malice or with intent to cause injury.") (internal quotations omitted).  Under Georgia law, "'[a]ctual malice' . . . denotes 'express malice,' i.e., 'a deliberate intention to do wrong,' and does not include 'implied malice,' i.e., the reckless disregard for the rights or safety of others."  <u>Murphy</u>, 647 S.E.2d at 60 (quoting <u>Merrow v. Hawkins</u>, 467 S.E.2d 336, 337 (Ga. 1996); <u>Felio v. Hyatt</u>, 639 F. App'x. 604, 611 (11th Cir. 2016) (Georgia's actual malice standard "asks whether the defendant had a wicked motive, or intended to cause harm to the plaintiff, rather than just intending to do the act that resulted in the plaintiff's injury").

---

[5]  Defendants also move for summary judgment on Plaintiff's state-law malicious prosecution claim on largely the same grounds as on Plaintiff's Section 1983 malicious prosecution claim, namely that probable cause existed regardless of Walp's misstatements.  (Doc. 46-14, pp. 15–16.)  For the same reasons discussed <u>supra</u>, Discussion Section I.A, the Court rejects this argument.

[6]  Plaintiff concedes that he cannot support a state law malicious prosecution claim against the City and thus only seeks to hold Walp liable under this claim.  (<u>See</u> doc. 52, p. 2, n.2.)

Georgia courts applying this standard have found that a jury can find actual malice where officers improperly procured statements in pursuit of an arrest warrant "despite knowing of the statements' falsity, inaccuracy or unreliability." Lagroon v. Lawson, 759 S.E.2d 878, 883 (2014). On the other hand, Georgia courts have found no actual malice where an officer did not "manufactur[e] evidence or knowingly present[] perjured testimony." Marshall v. Browning, 712 S.E.2d 71 (2011).

Viewing the evidence in the light most favorable to Plaintiff, Walp falsely stated in the Report that he reviewed the medical records, that he went to Memorial, and that he had obtained positive drug tests for "pre-admission" blood samples. Because Plaintiff has submitted evidence giving rise to a genuine dispute of material fact that Walp knowingly lied in the Report, see supra, Discussion Section I.A, a reasonable jury could find that he acted with actual malice. Brown, 792 F. App'x at 722 (evidence that the officer fabricated details of interaction to support arrest warrant was enough to support a finding of actual malice under Georgia law); Chronister v. Butts Cnty., No. 5:15-CV-150 (MTT), 2016 WL 1735860, at *5 (M.D. Ga. May 2, 2016) (presentation of an affidavit with knowingly false testimony was sufficient to show actual malice under Georgia law). Accordingly, Defendants' Motion for Summary Judgment on this claim is **DENIED** (Count VI).

### III.   <u>Monell</u> Liability

Defendants argue that even if Plaintiff states a viable federal claim against Walp, Plaintiff has not produced evidence from which Walp's violations could be attributed to the City under Monell v. Department of Social Services, 436 U.S. 658 (1978). (Doc. 46-14, pp. 14–15.) The "Monell Doctrine" holds that a municipality can be liable under Section 1983, but not under a theory of respondeat superior. Monell, 436 U.S. at 690–91. "To impose Monell liability, a

plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." Underwood v. City of Bessemer, 11 F.4th 1317, 1333 (11th Cir. 2021). Because the Court has already found that Plaintiff has submitted evidence to support a Fourth Amendment malicious prosecution claim, see supra, Discussion Section I, it turns now to whether Plaintiff has submitted evidence showing a custom or policy that caused the malicious prosecution.

"In order for a plaintiff to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice." McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004) (internal quotations omitted); see Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986) ("Normally[,] random acts or isolated incidents are insufficient to establish a custom or policy."). That is because "a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." Feliciano v. City of Miami Beach, 847 F. Supp. 2d 1359, 1365 (S.D. Fla. 2012) (citing Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1479 (11th Cir. 1991)). Additionally, to establish that the municipality exercised "deliberate indifference" to the alleged constitutional violations, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area[,] and the municipality made a deliberate choice not to take any action." Feliciano, 847 F. Supp. 2d at 1365 (citing Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998)). Requiring Section 1983 plaintiffs to identify an unconstitutional custom or policy "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be

said to be those of the municipality." <u>Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397, 403–04 (1997).

Plaintiff argues that Walp's actions were part of a custom and policy at SCMPD of performing deficient investigations. (Doc. 52, pp. 20–21.) In support, Plaintiff relies on the testimony of his expert witness, Eric Naugle, who testified that he has worked on "several" other cases involving SCMPD and believes that they lack "training, supervision, and overall investigative diligence." (Doc. 52, p. 20 (quoting doc. 38, p. 10).)[7] Plaintiff provides no specific evidence for these other instances, nor does he argue how they were similar to Walp's misconduct here. (<u>See generally id.</u>) Naugle's conclusory opinions about several other ambiguous cases lack the specificity required to show the City was aware of similar constitutional violations. <u>See</u> <u>Jackson v. City of Atlanta</u>, No. 1:21-CV-2578-MHC, 2022 WL 4089823, at *15 (N.D. Ga. Aug. 18, 2022) (ten instances in which city allegedly failed to investigate officers' misconduct was insufficient where plaintiff failed to allege the other instances were temporally proximate or sufficiently similar); <u>Harper v. Se. Ala. Med. Ctr.</u>, 998 F. Supp. 1289, 1301 (S.D. Ala. 1998) ("[T]he prior incidents must be sufficiently related in time and circumstances to the conduct giving rise to the pending action."). Without any detail surrounding these other alleged instances, Plaintiff has failed to show a widespread practice of which SCMPD would have been aware.[8]

---

[7] Plaintiff additionally relies on expert testimony that has since been excluded. (<u>See</u> doc. 52, p. 20; <u>and</u> doc. 62.)

[8] Beyond Naugle's general, conclusory statements regarding the overall practices at SCMPD, the only specific evidence Plaintiff adduces in support is a contemporaneous case involving alleged prosecutorial misconduct. (Doc. 52, p. 21; doc. 50-2, pp. 30–32.) The Court fails to see how this lone instance of *prosecutorial* misconduct in another case establishes misconduct by SCMPD, let alone establishes a widespread policy or custom.

Moreover, even if Plaintiff's expert is correct that SCMPD employees conducted deficient investigations in other cases, Plaintiff has failed to adduce any evidence that SCMPD was aware of these deficiencies.  Gold, 151 F.3d at 1350; see Jackson v. Montesino, No. 08-80554-CIV, 2009 WL 1515511, at *8 (S.D. Fla. June 1, 2009) (granting summary judgment on Monell claims where plaintiff failed to present evidence, such as prior complaints that were ignored, that sheriff's department knew or should have known of the existence of continuing constitutional violations).  There is simply no record evidence that SCMPD knew of a pattern of constitutional violations, let alone that it chose to ignore such deficiencies.

In sum, absent a widespread practice, or any knowledge by SCMPD, Plaintiff has failed to produce evidence of a policy or custom sufficient to establish municipal liability. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment on this claim (Count III).

## IV.   Plaintiff Abandoned His Intentional Infliction of Emotional Distress Claim

Defendants next move for summary judgment on Plaintiff's IIED claim, arguing that Plaintiff has failed to produce evidence of "extreme or outrageous" conduct and that nevertheless, such a claim is time barred.  (Doc. 46-14, pp. 16–18.)  In his Response, Plaintiff explicitly concedes that "[n]o evidence was obtained during the discovery process" to support his IIED claim against the City.  (Doc. 52, p. 2, n.2.)  However, he neglected to provide any argument (or concession) on his IIED claim against Walp.  (See generally id.)

"A party's failure to respond to any portion or claim in a motion indicates such portion, claim[,] or defense is unopposed.  When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."  State Farm Mut. Auto. Ins. Co. v. Robert Eugene Marshall & Thomasina Parks, 175 F. Supp. 3d 1377, 1385 (S.D. Ga.

2016) (quoting <u>Jones v. Bank of Am., N.A.</u>, 564 F. App'x 432, 434 (11th Cir. 2014)) (alterations adopted).   Accordingly, given Defendants' arguments and Plaintiff's unresponsiveness, and in the absence of any clear evidence of "extreme or outrageous" conduct necessary to support the claim, the Court will consider Plaintiff's IIED claim abandoned and thereby **GRANTS** Defendants' Motion for Summary Judgment on that claim (Count VII).

## V.      Plaintiffs Claim under the ORA

Finally, Defendants move for summary judgment on Plaintiff's claims under the Georgia Open Records Act ("ORA").   (Doc. 46-14, pp. 19–20.)   The ORA permits any citizen of Georgia to inspect public records of certain agencies.   O.C.G.A. § 50-18-70.   Defendants argue that Plaintiff cannot seek attorneys' fees or impose a civil fine under the statute because the statute does not contemplate monetary remedies without seeking compliance with the Act.   In support of this argument, Defendants cite to <u>Harrick v. Board of Regents of the University System of Georgia</u>, 2005 U.S. Dist. LEXIS 57597 at * 35 (N.D. Ga. Feb. 25, 2005), in which the Northern District of Georgia held that to maintain a cause of action for attorneys' fees, a plaintiff must be seeking enforcement of an open records request ("ORR").   (Doc. 46-14, p. 20.)   In Response, Plaintiff cites <u>Cardinale v. Keane</u>, 869 S.E.2d 613, 617 (Ga. App. 2022), in which the appeals court applied a recent decision from the Georgia Supreme Court and held that citizens are entitled to a private right of action to impose civil penalties for violations of the ORA.[9]   (Doc. 52, pp. 21–22.)   The Court finds that the resolution of this claim need not depend on nuanced legal arguments and can be more easily resolved by the record evidence.

---

[9]  The Court notes that the Georgia Court of Appeals in <u>Cardinale</u> did not address the question presented to the Court here concerning whether monetary remedies need to be attached to a claim seeking some sort of compliance with the ORA, but rather addressed the narrow question of whether the civil penalty was meant to extend to a private right of action.   <u>See</u> <u>Cardinale</u> 869 S.E.2d at 617.

In their Motion, Defendants alternatively argue the general position that "Plaintiff has not come forth with any evidence that . . . [the City] negligently violated [the ORA]." (Doc. 46-14, p. 20.) Indeed, the Court cannot discern the outline of Plaintiff's claim against the City, much less evidence to support such a claim. In the ORR to the City, Plaintiff requested "a complete copy of the SOP manual for the [SCMPD] that was in effect in 2016 and 2017." (Doc. 4-3.) In his statement of material facts, Plaintiff outlines the insufficiency of the documents sent by the Chatham County DA's Office but states no facts concerning the ORR to the City, or any deficient response to it. (See doc. 52-2, pp. 17–18.) Indeed, the Court does not see anything, either in the record evidence or in Plaintiff's Response, concerning whether SCMPD violated the ORA. "It is the obligation of the non-moving party, . . . not the Court, to scour the record in search of the evidence that would defeat a motion for summary judgment." Lawrence v. Wal-Mart Stores, Inc., 236 F. Supp. 2d 1314, 1322 (M.D. Fla. 2002) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479–80 (6th Cir. 1989)). When faced with Defendants' general evidentiary attack, Plaintiff neglected to identify any evidence to support the viability of his claim.

Without any supporting evidence or argument showing the Court how SCMPD, and thus the City, violated the ORA, the Court finds that Plaintiff has failed to raise a triable issue of fact on this claim. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** on this claim (Count IX).

## CONCLUSION

For all these reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment. Plaintiff has submitted evidence that Walp violated clearly established law under the Fourth Amendment when he knowingly made material misstatements the Report leading to Plaintiff's prosecution. Accordingly, Plaintiff has raised a

triable claim of federal malicious prosecution against Walp, and the Court **DENIES** Defendants' Motion on that claim (Count I).  Plaintiff has also submitted evidence that Walp acted with "actual malice" sufficient to maintain a malicious prosecution claim under Georgia law, and the Court **DENIES** Defendants' Motion on that claim (Count VI).

However, Plaintiff has failed to submit evidence linking Walp's alleged constitutional violations to the City.  Put another way, he has not shown a custom or policy sufficient to maintain <u>Monell</u> liability.  Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment on that claim (Count III)**.**

The Court also finds that Plaintiff has either conceded or failed to submit evidence to support his IIED claim (Count VII), his negligent retention claim (Count VIII), and his Open Records Act claim (Count IX), and accordingly the Court **GRANTS** Defendants' Motion on those counts.  Given that the only remaining claims in this action are against Defendant Walp, the Court **DIRECTS** the Clerk of Court to **DISMISS** the City of Savannah from this case and **UPDATE** the docket accordingly.

**SO ORDERED**, this 29th day of March, 2024.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA